**Anne CARLISLE, Plaintiff–Appellant,**

v.

**FARMERS INSURANCE EXCHANGE,**
Defendant–Appellee.

No. 95CA2080.

Colorado Court of Appeals,
Div. II.

March 20, 1997.

Rehearing Denied May 15, 1997.

Certiorari Denied Oct. 27, 1997.

Pribila & Sokolow, P.C., Anthony L. Sokolow, Colorado Springs, for Plaintiff–Appellant.

Levy & Lambdin, P.C., Suzanne Lambdin, Stephanie A. Montague, Karen H. Wheeler, Englewood, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

In this declaratory judgment action, plaintiff, Anne Carlisle, appeals the summary judgment entered in favor of the defendant, Farmers Insurance Exchange (Farmers). We affirm.

In August of 1993, Carlisle was a passenger in a car that was involved in a collision with a second vehicle. It is undisputed that both the driver of the car in which Carlisle was a passenger and the driver of the second vehicle were negligent in causing the accident.

The driver of the car in which Carlisle was a passenger (first driver) was insured for liability with policy limits of $25,000 per person, $50,000 per vehicle. The driver of the second car (second driver) was insured for liability with policy limits of $50,000 per person, $100,000 per vehicle. At the time, Carlisle was insured under her father's policy for uninsured/underinsured motorist protection (UM/UIM) with policy limits of $50,000.

Carlisle collected the policy limits of both negligent drivers' policies, for a total recovery of $75,000. She then initiated this declaratory judgment against Farmers, claiming that because the first driver had policy limits less than her UM/UIM coverage, he was underinsured. Carlisle argued that she is entitled to collect $25,000 of UM/UIM coverage, the difference between the limits of her father's UM/UIM policy and the first driver's liability policy. Farmers filed a motion for summary judgment, arguing in part that because Carlisle had recovered from the tortfeasors an amount greater than her father's UM/UIM policy, she is precluded from recovery under the policy. The trial court granted the motion for summary judgment, and Carlisle brought this appeal.

I.

■ We hold that the policy language unambiguously allows Farmers to aggregate the liability damages received by Carlisle.

The UIM/UM policy in question here provides the following:

Limits of Liability

The limits of liability shown on the Declarations for Uninsured Motorist apply to uninsured motorist coverage, including underinsured motorist coverage as defined in Additional Definition 3b, subject to the following:

. . . .

4. The maximum we will pay an insured person for damages caused by an underinsured motorist as defined in Additional Definition 3b shall be no more than the extent the uninsured motorist bodily injury limit exceeds the sum of the amounts of all liability bonds or insurance policies available to all parties held to be liable for the accident. We will pay under this coverage only after the limits of all such liability bonds or policies have been exhausted by the payment of settlements or judgments.

■ An insurance policy should be enforced as written, giving words their plain meaning according to common usage and avoiding strained constructions of the language used. *Allstate Insurance Co. v. Starke,* 797 P.2d 14 (Colo.1990). A provision of a policy is ambiguous and must be interpreted by the court when, upon being evaluated within the policy as a whole, *Union Insurance Co. v. Houtz,* 883 P.2d 1057 (Colo. 1994), it is reasonably susceptible to more than one meaning. *Northern Insurance Co. v. Ekstrom,* 784 P.2d 320 (Colo.1989).

First, we conclude that paragraph 4 quoted above unambiguously allows Farmers to offset "the sum of the amounts of all liability bonds or insurance policies available to all parties held to be liable for the accident."

Second, we reject Carlisle's argument that an ambiguity exists between the liability section of the policy concerning "other insurance" and the above quoted provisions. The liability section of the policy was not made part of the record and is, therefore, not

available for review. In fact, the only reference in the portion of the policy provided in the record regarding "other insurance" is an endorsement which expressly removes the paragraph concerning that phrase from the policy.

Carlisle's failure to include a complete copy of the policy in the record makes it impossible to construe the contract as a whole, or to determine if provisions within the policy create an ambiguity. Accordingly, we presume that the trial court's ruling is correct, and no ambiguity exists. *See Bowen v. Farmers Insurance Exchange*, 929 P.2d 14 (Colo.App.1996).

Thus, the policy unambiguously provides that Farmers may offset the amounts Carlisle received from the first and second drivers against the limits of her father's UM/UIM policy.

## II.

■ We also reject Carlisle's contention that aggregation of her recovery of damages from both tortfeasors violates public policy because it precludes any recovery under her father's UM/UIM coverage.

■ Even though a term in an insurance policy may be unambiguous, it should not be enforced if it violates public policy by attempting to dilute, condition, or limit statutorily mandated insurance coverage. *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990).

Here, the statute expressly permits Farmers to offset the combined recovery received by Carlisle from all tortfeasors. Section 10-4-609(5), C.R.S. (1994 Repl.Vol. 4A) provides the following:

■ The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held liable for the injury; or

(b) The amount of damages sustained, but not recovered.

The purpose of UM/UIM coverage is to provide an insured with benefits to the extent necessary to recover for losses caused by negligent drivers who are underinsured, subject to the insured's policy limits. However, § 10-4-609 does not require full indemnification of losses suffered by an UM/UIM insured under all circumstances. *Terranova v. State Farm Mutual Automobile Insurance Co., supra.*

Under § 10-4-609(5), Farmers is allowed to offset "the amount paid to the insured by or for *any* person or organization who may be held liable for the injury." (emphasis added) In construing a statute, "any" may mean "all". *Obert v. Colorado Department of Social Services*, 766 P.2d 1186 (Colo.1988); *City of Colorado Springs v. Tipton*, 910 P.2d 75 (Colo.App.1995). Thus, the applicable statute allows Farmers to aggregate all amounts received by the insured from all parties liable for her injuries. As a result, Farmer's policy does not violate public policy by impermissibly diluting or limiting statutorily mandated coverage.

Thus, we hold that Farmers properly offset the amounts Carlisle received from the first and second drivers against the limits of Carlisle's father's UM/UIM policy and correctly concluded that it owed Carlisle nothing.

This holding is in accord with the holdings of a majority of other jurisdictions with similar underinsured motorist statutes. *See Maryland Casualty Co. v. Callahan*, 1996 WL 176355 (Conn.Super.1996); *Bayles v. State Farm Mutual Automobile Insurance Co.*, 483 So.2d 402 (Fla.1985); *Prudential Property & Casualty Insurance Co. v. Kress*, 241 N.J.Super. 81, 574 A.2d 482 (1990); *Fasulo v. State Farm Mutual Automobile Insurance Co.*, 108 N.M. 807, 780 P.2d 633 (1989).

The cases cited by Carlisle are not applicable here because they involved offsets not provided for in the statute. *See Barnett v. American Family Mutual Insurance Co.*, 843 P.2d 1302 (Colo.1993) (against public policy to offset Social Security disability payments received by UM/UIM insured but not liability recovery from tortfeasor); *Newton v. Nationwide Mutual Fire Insurance Co.*, 197 Colo. 462, 594 P.2d 1042 (1979) (against public policy to offset PIP benefits received by UM/UIM insured).

**558**

### III.

■ Carlisle also argues that allowing Farmers to offset her combined recovery from both tortfeasors violates Colorado's pro rata liability law, § 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A). Specifically, she argues that allowing aggregation may impermissibly limit UM/UIM damages for other persons when their liability damages are reduced by the pro rata liability law, and therefore that aggregation should not be permitted in any case. We disagree, and hold that nothing in the pro rata liability law would impermissibly limit an insured's recovery of UM/UIM coverage.

### IV.

■ Finally, Carlisle contends that the second driver's liability insurance is "separate and distinct" for purposes of determining the extent that she was underinsured. We disagree.

■ Insurers are precluded from offsetting from UM/UIM coverage amounts received by an insured from "separate and distinct" types of insurance coverages or agreements, such as Social Security disability insurance benefits, release-trust agreements, or personal injury protection benefits. *See Barnett v. American Family Mutual Insurance Co., supra; Kral v. American Hardware Mutual Insurance Co.,* 784 P.2d 759 (Colo.1989); *Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979).

■ Insurers are allowed, however, to offset from UM/UIM coverage amounts received by an insured from a tortfeasor's liability carrier or from other UM/UIM policies. *Farmers Insurance Exchange v. Walther,* 902 P.2d 930, 935 (Colo.App.1995). Thus, while in this case there has been recovery from two separate liability insurance policies, they are not "separate and distinct" types of insurance.

Judgment affirmed.

CRISWELL and MARQUEZ, JJ., concur.