**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Ashley MURAKAMI, Defendant–Appellant.**

No. 05CA1472.

Colorado Court of Appeals, Div. IV.

Feb. 22, 2007.

Certiorari Denied Oct. 1, 2007.

Retherford, Mullen, Johnson & Bruce, LLC, Jerry A. Retherford, Scot W. Greenwood, Neil C. Bruce, Colorado Springs, Colorado, for Plaintiff–Appellee.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

In this declaratory judgment action concerning uninsured motorist coverage, defendant, Ashley Murakami, appeals the summary judgment entered in favor of plaintiff, American Family Mutual Insurance Company. We affirm.

### I. Background

The following facts are undisputed. Murakami was injured in an accident while she was a passenger in a car driven by Linda Nuñez. Murakami claims another car swerved into Nuñez, causing her to lose control and the car to overturn.

Nuñez, who was covered under her parents' policy with American Family, had liability insurance of $100,000 per person and $300,000 per accident, and uninsured/underinsured motorist (UM/UIM) insurance of $100,000 per person and $300,000 per accident. Murakami, who was covered under her father's policy with American National Property and Casualty Company (ANPAC), also had UM/UIM coverage of $100,000 per person and $300,000 per accident.

American Family paid Murakami $100,000 in settlement of her liability claim against Nuñez. Murakami then filed claims for uninsured motorist benefits with both American Family and ANPAC. American Family denied the claim, and filed a declaratory judgment action to determine its rights and responsibilities under the Nuñez policy with respect to Murakami.

The trial court granted summary judgment in favor of American Family, finding the case

§ 24–51–1105, C.R.S.2006.

indistinguishable from *Farmers Insurance Exchange v. Star,* 952 P.2d 809 (Colo.App. 1997). There, a division of this court held the statutory limits for UM/UIM coverage are not to be multiplied by the number of uninsured or underinsured motorists who cause an accident.

## II. *Farmers Insurance Exchange v. Star*

Murakami contends *Star* was wrongly decided and urges us not to follow it. Indeed, we are not required to follow *Star. See In re Estate of Becker,* 32 P.3d 557 (Colo.App. 2000)(one division of the court of appeals is not bound by the decision of another division), *aff'd sub nom. In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002). However, we conclude it was correctly decided.

Star was injured in a three-car accident in which she was driving one of the cars. Of the two other drivers, one was uninsured, and the other was underinsured. Star had UM/UIM insurance of $100,000 per person and $300,000 per accident under her policy with Farmers. She received $25,000 from the underinsured motorist's insurer and $75,000 of UM/UIM coverage from Farmers, for a total recovery of $100,000.

Star sought arbitration concerning her UM/UIM coverage, claiming Farmers' $75,000 payment was attributable to the underinsured motorist and, therefore, Farmers was required to pay an additional sum under her UM/UIM coverage attributable to the uninsured motorist.

Farmers filed a declaratory judgment action asserting Star's UM/UIM coverage was exhausted upon payment of the $75,000. Thus, the issue in *Star* was whether Farmers was required to multiply Star's UM/UIM coverage by two because two uninsured or underinsured motorists had been involved in the accident. The division held such multiplied coverage was not required because the language of Star's insurance policy and the uninsured motorist statute clearly indicated otherwise.

In this case, unlike in *Star,* there is only one potential uninsured motorist, the driver of the second car, who remains unidentified. *Star* supports the trial court's

ruling here. In addition, *Carlisle v. Farmers Insurance Exchange,* 946 P.2d 555 (Colo. App.1997), is dispositive of some of the issues in this case.

Carlisle was injured in a two-car accident in which she was a passenger in one of the cars, and it was undisputed the drivers of both cars were negligent. The driver of the car in which Carlisle was riding had liability insurance of $25,000 per person and $50,000 per accident, and the other driver had liability insurance of $50,000 per person and $100,000 per accident. Carlisle had UM/UIM coverage of $50,000 per person and $100,000 per accident under her own insurance policy with Farmers.

Carlisle collected the liability limits of both drivers' policies for a total recovery of $75,000. She then sought additional sums from Farmers, claiming the driver of the car in which she was riding was underinsured because his liability limits were less than her UM/UIM coverage. Carlisle argued she was entitled to collect an additional $25,000 of UM/UIM coverage, the difference between her UM/UIM policy and that driver's liability policy.

Carlisle's UM/UIM policy provided, in relevant part:

> The maximum we will pay an insured person for damages caused by an underinsured motorist as defined in Additional Definition 3b shall be no more than the extent the uninsured motorist bodily injury limit exceeds the sum of the amounts of all liability bonds or insurance policies available to all parties held to be liable for the accident. We will pay under this coverage only after the limits of all such liability bonds or polices have been exhausted by the payment of settlements or judgments.

*Carlisle, supra,* 946 P.2d at 556.

The division concluded Carlisle's insurance policy clearly authorized Farmers to aggregate the amount Carlisle received from the two drivers and offset that amount against the limits of her UM/UIM coverage. Thus, because Carlisle had already received payments from the other drivers' insurers in excess of the limits of her UM/UIM coverage, Farmers owed her nothing more.

Here, American Family offset the $100,000 Murakami received for Nuñez's liability against the limits of the UM/UIM coverage and concluded it owed her nothing more. The Nuñez UM/UIM policy provided, in relevant part:

The limits of liability of this coverage will be reduced by:

(1) A payment made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable.

(2) A payment under the liability coverage of this policy.

(3) A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law.

(4) A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

Thus, this case is legally indistinguishable from *Carlisle*.

### III. Public Policy

Murakami contends *Huizar v. Allstate Insurance Co.*, 952 P.2d 342 (Colo.1998), and *State Farm Mutual Automobile Insurance Co. v. Brekke*, 105 P.3d 177 (Colo.2004), effectively overruled cases holding an insurer may aggregate its insured's recovery from tortfeasors and their insurers and offset the amount against the insured's UM/UIM coverage. Murakami argues *Huizar* and *Brekke* establish that, as public policy, an insured motorist has the right to recover for loss caused by an uninsured motorist in the same manner that recovery would be permitted for a loss caused by an insured motorist. Thus, she submits the offset in this case violates public policy. We are not persuaded.

*Huizar* and *Brekke* concerned a completely different aspect of UM/UIM coverage: the validity of certain procedures an insured must follow to receive UM/UIM benefits. In *Huizar*, the supreme court held the "trial de novo" clause in a UM/UIM provision, which permitted either party to demand a trial on the merits after arbitration when the amount

awarded exceeded a specified limit, violated public policy. In *Brekke*, the court held the "actual trial" clause in a UM/UIM provision, which allowed an insurer to demand a jury trial when its insured established an uninsured motorist's liability by default, was contrary to public policy.

In both *Huizar* and *Brekke*, the court focused on the diminution of an insured's recovery of UM/UIM benefits caused by being forced to jump through various procedural hoops, and concluded the provisions allowing those procedures violated public policies favoring arbitration and timely resolution of claims. *See also Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487 (Colo.1998) (concluding a "consent to sue" clause in UM/UIM provision violated public policy for similar reasons). In neither case did the supreme court address an insurer's right to aggregate its insured's recovery from tortfeasors and their insurers and offset the amount against the insured's UM/UIM coverage.

■ However, in *Carlisle*, the division specifically rejected the same argument Murakami raises in this case. Carlisle argued it violated public policy to allow her insurer to aggregate her recovery from the tortfeasors' insurers and offset the amount against her UM/UIM coverage. The division disagreed, reasoning the uninsured motorist statute, § 10–4–609, C.R.S.2006, expressly permitted insurers to do so:

(5) The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

The division also cited *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990), for the proposition that § 10–4–609 does not require full indemnification for losses suffered by a UM/UIM insured under all circumstances. *Terranova*

is good and binding law, and we are not aware of any subsequent authority limiting or disapproving of this interpretation of § 10–4–609.

The division in *Star* rejected the public policy argument raised in *Carlisle* for the same reasons, and also cited *Spaur v. Allstate Insurance Co.*, 942 P.2d 1261 (Colo. App.1996), for the proposition that an insurance provision complying with the specific requirements of applicable statutes conforms to the public policy codified within those statutes.

Thus, we conclude *Huizar* and *Brekke* did not overrule cases holding an insurer may aggregate its insured's recovery from tortfeasors and their insurers and offset the amount against the insured's UM/UIM coverage.

### IV. Law in Other Jurisdictions

Murakami contends Colorado is the only state that allows an insurer to aggregate its insured's recovery from tortfeasors and their insurers and offset the amount against the insured's UM/UIM coverage. She is incorrect. *See Bayles v. State Farm Mut. Auto. Ins. Co.*, 483 So.2d 402 (Fla.1985)(where two tortfeasors are liable to an injured person in automobile accident, although one tortfeasor is uninsured, the injured person cannot recover under his own uninsured motorist policy if the insured tortfeasor has policy limits greater than or equal to those in the injured person's uninsured motorist coverage); *In Do Kim v. Standard Mut. Ins. Co.*, 213 Ill. App.3d 435, 157 Ill.Dec. 559, 572 N.E.2d 1023 (1991)(insured's uninsured motorist recovery was limited to the difference between the uninsured motorist coverage provided under the insured's policy and the amount paid by a joint tortfeasor); *Prudential Prop. & Cas. Ins. Co. v. Johnson*, 238 N.J.Super. 1, 568 A.2d 1193 (Ct.App.Div.1989) (insured's recovery of underinsured motorist benefits under his policy was barred under N.J.Rev.Stat. § 17:28–1.1(e) because his total recovery from all policies covering tortfeasors was in excess of his underinsured motorist limits); *Am. States Ins. Co. v. Frost*, 110 N.M. 188, 793 P.2d 1341 (1990)(insurer was not required to pay uninsured motorist coverage

when amount insured collected from underinsured driver exceeded amount of uninsured motorist coverage); *Pempkowski v. State Farm Mut. Auto. Ins. Co.*, 451 Pa.Super. 61, 678 A.2d 398 (1996)(in a multi-tortfeasor context, setoff clause reducing uninsured motorist benefits by proceeds of liability coverage did not violate public policy), *aff'd*, 548 Pa. 23, 693 A.2d 201 (1997); *Poper v. Rollins*, 90 S.W.3d 682 (Tenn.2002)(Tenn.Code.Ann. § 56–7–1201(d) unambiguously allows an uninsured motorist insurance carrier to limit its liability by offsetting all other insurance payments applicable to the injury); *Traders & Gen. Ins. Co. v. Reynolds*, 477 S.W.2d 937 (Tex.Civ.App.1972)(insurer was entitled to credit for amount joint tortfeasor and his insurer had paid under a liability policy in settlement of insured's uninsured motorist claim). *But see Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197 (3d Cir.2001); *Collins v. Colonial Penn Ins. Co.*, 257 Conn. 718, 778 A.2d 899 (2001); *Doyle v. Mut. of Enumclaw Ins. Co.*, 93 Wash.App. 120, 966 P.2d 1279 (1998).

### V. Joint and Several Liability

Murakami contends the division in *Star* erroneously concluded that when Colorado limited joint and several liability under § 13–21–111.5, C.R.S.2006, it excluded UM/UIM coverage. We disagree.

In *Star,* the division rejected the argument that § 13–21–111.5 required Star be permitted to recover $100,000 of UM/UIM coverage from each uninsured or underinsured motorist. Citing *Carlisle*, the division reasoned that § 10–4–609(5) expressly provided that an insurer may offset against the UM/UIM limits the amount the insured received from all parties liable for the injuries. Thus, the division concluded § 13–21–111.5 was irrelevant in applying the setoff amounts and limits of UM/UIM coverage. We concur with the *Star* division's reasoning and conclusion.

### VI. Singular or Plural Construction

Murakami contends the division in *Star* erroneously concluded the terms "an uninsured motorist" and "the driver" are plural when the plain meaning of the terms is singular. We will not reexamine this issue,

because in this case, there is only one uninsured motorist.

The judgment is affirmed.

Judge CASEBOLT and Judge HAWTHORNE concur.