**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATRICK ADAMSCHECK,

     Plaintiff - Appellee,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

     Defendant - Appellant.

No. 15-1125

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-02074-RPM)**
_____

Debra K. Sutton (Ashley R. Larson with her on the briefs), Sutton Booker, P.C., Denver, Colorado, for Defendant-Appellant.

Steven T. Nolan, Steven T. Nolan, P.C., Colorado Springs, Colorado (Joseph R. Winston, The Winston Law Firm, P.C., Colorado Springs, Colorado, with him on the briefs), for Plaintiff-Appellee.

_____

Before **GORSUCH**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.

_____

At the close of a five-day trial, a jury found that Defendant-Appellant

American Family Mutual Insurance Company (American Family) breached its

insurance contract and unreasonably denied payment of underinsured motorist (UIM) benefits to Plaintiff-Appellee Patrick Adamscheck. On appeal, American Family challenges three district court rulings: the district court's decision denying American Family's motion for partial summary judgment on the ground that workers' compensation benefits could not be offset against any recovery at trial, the district court's pre-trial decision to exclude American Family's biomechanical engineering expert, and the district court's post-verdict calculation of damages to include the jury's award of $395,561 in UIM benefits, plus twice that amount for statutory damages on the unreasonable-denial-of-benefits claim.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, but vacate the verdict and remand for additional proceedings. We conclude the district court correctly determined that workers' compensation benefits may not be offset against UIM coverage under Colorado law. But the district court failed to fulfill its gatekeeping obligation under Rule 702 of the Federal Rules of Evidence, and therefore erred in excluding American Family's expert. Because the record is inadequate to allow us to perform the district court's gatekeeping function in the first instance, and because we cannot conclude this error was harmless, we vacate the verdict and remand for a new trial. Finally, we do not reach American Family's objection to the calculation of statutory damages, which was not first presented to the district court.

## I.    BACKGROUND

On June 7, 2011, Patrick Adamscheck was driving in Colorado Springs, Colorado, while working as an El Paso County Deputy Sheriff, when he was rear-ended by Ms. Darian Agan. Because he was in the course and scope of his employment at the time of the accident, Mr. Adamscheck received workers' compensation benefits for his injuries.

With American Family's permission, Mr. Adamscheck settled with Ms. Agan for her liability policy limit of $25,000. But Mr. Adamscheck asserted he had severely injured his lower back and, as a result, had incurred damages that exceeded $25,000. In particular, Mr. Adamscheck claimed $185,000 in existing economic damages, which included past medical expenses and lost wages, and also sought recovery of his future medical care, future wage loss, and permanent disability, along with non-economic damages. Thus, in addition to Ms. Agan's policy limits, Mr. Adamscheck made demand under a personal automobile insurance policy issued by American Family (the Policy) for the full $500,000 of his underinsured motorist (UIM) coverage.

American Family offered to settle Mr. Adamscheck's claim for $65,000, but Mr. Adamscheck rejected the offer and filed suit in Colorado state court. He asserted claims for unreasonable denial of benefits pursuant to Colorado state statute, breach of contract, and bad faith. American Family removed the case to the United States District Court for the District of Colorado.

### A.    *Pretrial Rulings*

Approximately three months before the final pretrial conference, American Family filed a motion for partial summary judgment, arguing it could not be liable

3

for common law or statutory bad faith because it had properly reduced Mr. Adamscheck's claim by the amounts he had received in workers' compensation benefits. American Family claimed that Colorado law allows insurers to prohibit double recovery for losses already covered by workers' compensation, and that Mr. Adamscheck's policy included such limiting provisions. American Family also asserted that under Colorado's UIM statute, "a Plaintiff would not be legally entitled to recover duplicate damages from a tortfeasor." Finally, American Family relied on public policy to assert a defendant should not be charged twice for the same elements of loss.

American Family therefore argued its offer of $65,000 to Mr. Adamscheck in satisfaction of his claim—which included $12,033 for lost wages and $52,967 for general damages—was not unreasonable. Specifically, it claimed the lost wages portion of the offer was properly limited to the one-third of Mr. Adamscheck's lost wages that had not been paid through workers' compensation. American Family also asserted it had reasonably excluded any amount for future losses from the offer based on video surveillance that proved Mr. Adamscheck's symptoms had resolved and he did not need future care. According to American Family, because the offer was consistent with Colorado law and the Policy, it could not constitute bad faith as a matter of law.

On June 13, 2014, the district court summarily denied American Family's motion. The district court revisited the issue at the final pretrial conference on August 26, 2014, and again at the trial preparation conference on January 5, 2015, but each time the court

4

confirmed its ruling that workers' compensation was "not a defense in this case" and was "not a setoff."

Although American Family stipulated that Ms. Agan was at fault in causing the accident, it disputed the cause and extent of Mr. Adamscheck's injuries. American Family asserted that Mr. Adamscheck had exaggerated his symptoms and that the low-speed impact of the accident could not have caused the extensive injuries he claimed. To the extent Mr. Adamscheck was injured at all, American Family attributed his symptoms to a previous workplace injury. In support, American Family noted Mr. Adamscheck had reported largely the same symptoms after his workplace injury that he now attributed—albeit claiming greater severity—to the traffic accident with Ms. Agan. American Family also relied on evidence that no injuries were reported at the scene of the accident, Mr. Adamscheck's vehicle sustained only $390.60 in damage to the rear bumper, and video surveillance showed Mr. Adamscheck engaging in activities after the accident that, in American Family's view, showed he was misrepresenting the severity of his injuries.

To further support its theory, American Family planned to call a biomechanical engineering expert, Dr. Jeffrey P. Broker. But at the final pretrial conference, the district court excluded Dr. Broker's expert testimony, based on the following exchange:

> THE COURT: . . . So what are the--I don't do motions in limine. I don't know what you're contemplating here.
>
> MR. WINSTON: Your Honor, I think the motion in limine that we were filing is--they have a biomechanical engineer who I think his opinion is that, given the forces from the accident, he couldn't have been hurt in

5

the type of accident that occurred. And that kind of testimony--there are lots of District Court opinions, and I think there's a Court of Appeals--

THE COURT: Well, I wouldn't allow that.

MR. WINSTON: Okay, well, that's what our motion in limine was, that he couldn't have been hurt in the accident because he--

THE COURT: Well, I wouldn't allow that kind of testimony. So forget that.

MS. SUTTON: I won't ask that question.

THE COURT: Well, you won't call that witness.

MS. SUTTON: Well, I might give it a shot if you'll let me lay foundation for, I think, some opinion testimony and an explanation for the vehicle dynamics, what happens in a rear-end collision, the nature of the injury he sustained.

THE COURT: You know, every rear-end collision, something happens differently.

MS. SUTTON: It does. And I--

THE COURT: Yeah, it does. And you can make a proffer, but I won't allow that kind of testimony.

MS. SUTTON: Okay.

THE COURT: You can make a proffer during the trial.

During a subsequent trial preparation conference, the district court reiterated that American Family could submit a written proffer of Dr. Broker's testimony at trial. The court stated it had "already excluded" Dr. Broker's testimony, but would "do it officially on the record in the course of the trial so that it's an appropriate proffer." It then instructed American Family's counsel to submit Dr. Broker's expert report as the proffer. American Family followed the district court's instruction and

6

submitted a written proffer in the form of Dr. Broker's expert report on the first day of trial.

## B. *Post-Trial Damages Calculation*

At the close of trial, the jury returned a verdict in favor of Mr. Adamscheck, awarding $395,561 in UIM benefits and finding that American Family unreasonably denied payment of Mr. Adamscheck's claim.[1] The district court dismissed the jury and then in the presence of both parties, applied Colo. Rev. Stat. § 10-3-1116 to calculate the total judgment amount. The district court stated its understanding that, for statutory damages under section 10-3-1116, the amount of the jury verdict would be doubled. Mr. Adamscheck's counsel responded that the double statutory damages were "in addition to the principal." Rather than challenge this position, American Family's counsel stated, "That's my understanding, Your Honor. However, this --." Although it appears the district court interrupted, counsel did not finish her statement or otherwise make an objection to Mr. Adamscheck's proposed calculation of statutory damages.

The district court therefore entered a total judgment of $1,186,683, which included the jury's award of $395,561 on the breach of contract claim, plus twice that amount for the statutory violation. After entering a Final Judgment consistent with its oral ruling, the district court amended the judgment to include $104,439 in

---

[1] Mr. Adamscheck withdrew his common law bad faith claim during trial. Thus, the jury decided only the breach of contract claim and the statutory claim for unreasonable delay or denial of benefits.

prejudgment interest, and awarded Mr. Adamscheck $122,936 in attorneys' fees and $32,970.48 in costs, for a total of $1,447,028.48.[2]

## II. DISCUSSION

### A. *Workers' Compensation*

American Family challenges the district court's denial of summary judgment, claiming that because its pre-suit offer appropriately included an offset for workers' compensation benefits, the bad faith claim should not have been presented to the jury. We review the district court's denial of summary judgment de novo, "apply[ing] the same legal standard used by the district court . . . and examin[ing] the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

Here, the material facts are not disputed: the parties stipulated that Mr. Adamscheck was in the course and scope of his employment at the time of his accident with Ms. Agan and that he received workers' compensation benefits as a result. The only issue before the district court on summary judgment was a legal question: whether Mr. Adamscheck's UIM benefits should be offset by the amounts he received in workers' compensation benefits for the losses resulting from the same accident.

---

[2] American Family does not dispute the award of attorneys' fees and costs beyond its request to "reverse the final amended judgment entered against American Family . . . , including the award of attorneys' fees and costs awarded."

8

American Family argues the answer to that question is apparent from the plain language of the Policy. Specifically, American Family cites the "Limits of Liability" provision in the UIM portion of the Policy:

> 3.     No one will be entitled to receive duplicate payments for the same elements of loss. Any amount we pay under this Part to or for an insured person will be reduced by any payment made to that person under any other Part of this policy. In no event shall a coverage limit be reduced below any amount required by law.
>
> . . .
>
> 5.     We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any workers' compensation law, disability benefits law or any similar law.

American Family is correct that these provisions plainly preclude duplicate recovery for the same elements of loss covered by the Policy, expressly including amounts received under the workers' compensation laws. *See Mountain States Mut. Cas. Co. v. Roinestad*, 296 P.3d 1020, 1024 (Colo. 2013) ("When interpreting an insurance contract, we first give effect to the plain meaning of its terms, and we only find ambiguity where a term is reasonably susceptible to more than one meaning." (citation omitted)). But we will not enforce the plain language of the Policy if it is contrary to Colorado law or public policy. *See Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 740 n.8 (10th Cir. 2009) ("Where there is a conflict between an insurance policy and a statute, the statute controls."); *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 100 (Colo. 1995) (en banc) ("[E]ven if a policy provision is unambiguous, the provision is void and unenforceable if it violates public policy by attempting to dilute, condition, or limit statutorily mandated coverage." (internal quotation marks

9

omitted)); *id.* ("Insurance policy clauses that are contrary to a provision of a statute are void as against public policy. Consistently, this court has refused to enforce provisions in automobile insurance policies that are against public policy." (citation omitted)). *See also Brown v. Royal Maccabees Life Ins. Co.*, 137 F.3d 1236, 1242 (10th Cir. 1998) (stating that, under Wyoming law, insurance contracts must not conflict with pertinent statutes or public policy); *Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co.*, 969 F.2d 931, 934–35 (10th Cir. 1992) (holding arbitration clause in reinsurance agreement unenforceable under Kansas statute).

The provisions of the Policy quoted by American Family are contrary to Colorado law. In *Nationwide Mutual Insurance Co. v. Hillyer*, the insured's policy required reduction of UIM benefits by "[t]he amount paid and the present value of all amount payable on account of bodily injury under any workmen's compensation law." 509 P.2d 810, 811 (Colo. App. 1973). Relying on this provision the insurer argued it could offset the insured's recovery by the amount received in workers' compensation benefits. *Id.* The insured disagreed, claiming that such an offset would be contrary to public policy. *Id.* The Colorado Court of Appeals acknowledged that courts had reached diverging conclusions on this issue, but ultimately adopted the position of those courts that "prohibit a casualty insurance carrier from reducing its liability to a victim of an uninsured motorist by the amount of any workmen's compensation award." *Id.* Because the Colorado Supreme Court has not had occasion to reach this issue, we consider the pronouncement from the Colorado Court of

10

Appeals persuasive of how the Colorado Supreme Court might rule. *See Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864, 869 n.2 (10th Cir. 1993).

But American Family attempts to distinguish *Hillyer*, claiming its holding should be limited to situations where the insurer attempts to reduce UIM benefits below the statutory minimum. The court in *Hillyer* did not so limit its holding. Rather, it stated broadly that recovery under a UM (or UIM) policy could not be reduced by amounts paid by workers' compensation.[3] And since *Hillyer*, Colorado courts, including the Colorado Supreme Court, have prohibited offsets "from UM/UIM coverage amounts received by an insured from 'separate and distinct' types of insurance coverages or agreements, such as Social Security disability insurance [SSDI] benefits, release-trust agreements, or personal injury protection [PIP] benefits." *Carlisle v. Farmers Ins. Exch.*, 946 P.2d 555, 558 (Colo. App. 1997); *see also Barnett v. Am. Family Mut. Ins. Co.*, 843 P.2d 1302, 1307–09 (Colo. 1993) (prohibiting offset for SSDI payments); *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759 (Colo. 1989) (same for release-trust agreements); *Newton v. Nationwide Mut. Fire Ins. Co.*, 594 P.2d 1042, 1045–46 (Colo. 1979) (same for PIP). We are

---

[3] The parties have not cited and we have not located more recent Colorado decisions addressing the enforceability of provisions allowing for the offset of workers' compensation benefits against UM/UIM benefits. In *Colorado Insurance Guaranty Ass'n v. Menor*, the Colorado Court of Appeals remanded for a factual determination of the overlap between UIM and workers' compensation benefits without reaching the question of whether the offset provision was contrary to public policy. 166 P.3d 205, 212–13 (Colo. App. 2007). Thus, *Hillyer* remains instructive on this issue.

11

persuaded that the Colorado Supreme Court would treat workers' compensation benefits the same as these other types of benefits for purposes of offset.

In support of a contrary conclusion, American Family cites *Levy v. American Family Mutual Insurance Co.*, 293 P.3d 40 (Colo. App. 2011). There, American Family paid for the insured's medical expenses and the insured also received a settlement from the tortfeasor's insurer. When the insured then approached American Family a second time, seeking recovery of UIM benefits, *id.* at 42–43, American Family successfully argued that the amount of UIM benefits should be reduced by the amounts *American Family* had already paid for the insured's medical expenses. Importantly, the facts in *Levy* did not present "the traditional collateral source scenario where the plaintiff is entitled to double recovery—once from the tortfeasor and once from her insurer."[4] *Id.* at 45. Rather, the question in *Levy* was whether the insurer itself should pay twice for the same loss. It therefore does not persuade us that American Family should be entitled to offset Mr. Adamscheck's workers' compensation benefits here.

We also reject American Family's argument that Colorado's collateral source rule, Colo. Rev. Stat. § 13-21-111.6, requires an offset for Mr. Adamscheck's workers' compensation benefits. Section 13-21-111.6 provides:

---

[4] *Calderon v. American Family Mutual Insurance Co.*, also cited by American Family, similarly involves a situation where the insured sought to recover twice from American Family. Thus, as explained below, *Calderon* and *Levy* are inapplicable here for similar reasons. No. 13CA1185, 2014 WL 2149652 (Colo. App. May 22, 2014), *cert. granted*, No. 14SC494, 2015 WL 3956029 (June 29, 2015).

12

In any action by any person or his legal representative to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company, or fund in relation to the injury, damage, or death sustained; except that the verdict shall not be reduced by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person. The court shall enter judgment on such reduced amount.

Although section 13-21-111.6 includes a directive that trial courts reduce a verdict by the amount received from collateral sources, it also contains an exception for benefits "paid as a result of a contract entered into and paid for by or on behalf of such person." *Id.* In turn, the Colorado Court of Appeals has held that workers' compensation benefits are received as a result of an employee's contract with its employer and therefore fall within this express statutory exception. *See Combined Commc'ns Corp., Inc. v. Pub. Serv. Co.*, 865 P.2d 893, 902 (Colo. App. 1993). Therefore, section 13-21-111.6 is not implicated here.

Finally, American Family cites Colo. Rev. Stat. § 10-4-609 to argue for an offset. Section 10-4-609(1)(c) explains that UIM coverage "shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of damages sustained." According to American Family, workers' compensation is "legal liability coverage" that must be offset against the amount of the damages sustained to determine the amount of UIM coverage due. Because neither the statute nor the Colorado courts

13

define "legal liability coverage," American Family relies on dictionary definitions equating "legal liability" with "legal obligation or accountability." American Family reasons that workers' compensation carriers are legally obligated to pay benefits and thus, such benefits must fall within the scope of "legal liability coverage." We reject this interpretation.

Colorado courts interpreting section 10-4-609 have consistently framed their analysis and conclusions in terms of the *tortfeasor's* or the *liable party's* legal liability coverage. *See Tubbs v. Farmers Ins. Exch.*, 353 P.3d 924, 926 (Colo. App. 2015); *Jordan v. Safeco Ins. Co. of Am., Inc.*, 348 P.3d 443, 448–49 (Colo. App. 2013). In *Jordan*, the Colorado Court of Appeals reviewed the legislative history of section 10-4-609, noting that prior to 2008, that section provided:

> The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
>
> (a)      The difference between the limit of uninsured motorist coverage and the *amount paid* to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
>
> (b)      The amount of damages sustained, but not recovered.

*Jordan*, 348 P.3d at 448 (quoting Ch. 92, sec. 1, § 10-4-609(5), 1983 Colo. Sess. Laws 455). Colorado courts interpreted this prior provision to provide "that UIM benefits must be provided for damages in excess of any amount paid by a tortfeasor in settlement or of any judgment against the tortfeasor." *Id.*[5]

_____

[5] The Colorado decisions identified in *Jordan* are *Freeman v. State Farm Mutual Automobile Insurance Co.*, 946 P.2d 584 (Colo. App. 1997); *State Farm*

14

In 2008, the Colorado General Assembly repealed section 10-4-609(5) and replaced it. Of importance for our purposes, the revised version of the statute includes section 10-4-609(1)(c), which American Family relies on for its argument that workers' compensation benefits are "legal liability coverage." But the Colorado Court of Appeals foreclosed that interpretation in *Jordan*. Relying on the proposition that the General Assembly had knowledge of the prior statute and the judicial decisions interpreting it, the court held: "The amended statutory language [of section 10-4-609(1)(c)] is plain and unambiguous. The insurer's obligation to pay benefits is now triggered by exhaustion of the *tortfeasor's* 'limits of . . . legal liability coverage,' not necessarily any payment from or judgment against the tortfeasor." *Id.* at 449 (emphasis added) (citation omitted). *See also Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1109–10 (D. Colo. 2013) (applying Colorado law to interpret Section 10-4-609(1)(c) and holding insurer is liable for damages that exceed the tortfeasor's liability policy limit, up to the UIM coverage limit of the policy). Thus, the General Assembly changed Colorado's UIM coverage scheme from "a 'reduction' approach—where UIM coverage was reduced by any payment received or judgment against the tortfeasor—to an 'excess' approach—where UIM coverage is payable for damages exceeding the *tortfeasor's liability policy limit*, subject only to the UIM coverage limit in the insured's policy." *Jordan*, 348 P.3d at 449 (emphasis added).

---

*Mutual Automobile Insurance Co. v. Tye*, 931 P.2d 540 (Colo. App. 1996); and *State Farm Mutual Automobile Insurance Co. v. Bencomo*, 873 P.2d 47 (Colo. App. 1994).

Subsequently, the Colorado Court of Appeals interpreted section 10-4-609(1)(c) somewhat more broadly, stating that its plain and ordinary meaning "requires that UIM policies cover the difference between the damages the insured party suffered and the limit of any *liable party's legal liability coverage*, regardless of whether the insured party's recovery from the liable party exhausted that limit." *Tubbs*, 353 P.3d at 926 (emphasis added). Under this interpretation, if a party is liable for the damages the insured party suffered, that liable party's legal liability coverage limit may be included in the calculation of the amount of UIM benefits due.

Here, there can be no argument that Mr. Adamscheck's workers' compensation benefits are part of Ms. Agan's "legal liability coverage." And the parties do not dispute that Ms. Agan is the party liable for the damages suffered by Mr. Adamscheck as a result of the accident. We accordingly reject the argument that Mr. Adamscheck's workers' compensation benefits can be offset against UIM benefits under section 10-4-609(1)(c).

In summary, we hold that under Colorado law, American Family was not entitled to an offset for the amount Mr. Adamscheck received from workers' compensation. As a result, we affirm the district court's decision denying summary judgment on Mr. Adamscheck's bad faith claim.

### B. *Exclusion of Expert Testimony*

Next, American Family argues the district court erred when it excluded Dr. Jeffrey Broker as an expert witness. Because the district court summarily excluded Dr. Broker's testimony without providing the basis for its decision, American Family

16

maintains the district court failed to perform its gatekeeping function under Rule 702 of the Federal Rules of Evidence and under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). We agree.

"It is by now well established that [Fed. R. Evid.] 702 imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 589). Although the district court has discretion in deciding how to conduct a *Daubert* analysis, "there is no discretion regarding the actual *performance* of the gatekeeping function." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). Accordingly, we review de novo the issue of whether the district court "actually performed its gatekeeper role in the first instance." *Dodge*, 328 F.3d at 1223. If the district court fulfilled its gatekeeping responsibility, "[w]e then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion." *Id.*

1.     **Gatekeeping Function**

We turn first to whether the district court actually performed its gatekeeping role with respect to Dr. Broker's testimony. "For purposes of appellate review, a natural requirement of [the gatekeeping] function is the creation of 'a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law.'" *Goebel*, 215 F.3d at 1088 (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)). "Absent specific findings or

17

discussion on the record, it is impossible to determine on appeal whether the district court "'carefully and meticulously" reviewed the proffered scientific evidence' or instead made an 'off-the-cuff' decision to admit or deny the expert testimony." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007) (alteration omitted) (quoting *Goebel*, 215 F.3d at 1088).

To put this rule in context, we pause to discuss two decisions from this court. In the first, *Goebel*, the district court denied a motion in limine to exclude an expert's testimony without "a single explicit statement on the record to indicate that the district court ever conducted any form of *Daubert* analysis whatsoever." 215 F.3d at 1088. Although the district court stated it had "fully considered the matter" and found "sufficient foundation" for the testimony, beyond these two statements, the district court did not provide findings explaining the basis for its decision. *Id.* We held, "In the absence of such findings, we must conclude that the court abused its discretion in admitting such testimony." *Id.*

In our second decision, *Dodge*, the district court provided slightly more detail, but we again found the findings insufficient to uphold its decision. 328 F.3d at 1223–28. There, the district court had reviewed limited briefing, seeking to exclude the testimony of several expert witnesses, and had held an abbreviated *Daubert* hearing during which the parties submitted proffers of the witnesses' testimony. *Id.* at 1223–24. On appeal of the district court's decision to admit the challenged testimony, we concluded the district court had failed to perform its gatekeeping function. *Id.* at 1225. Although the district court briefly explained its reasons for admitting the

18

experts' testimony, its oral findings "lack[ed] the degree of specificity that would allow" a determination of whether the district applied the proper legal standard. *Id.* at 1226. Consequently, we reversed and remanded for a new trial. *Id.* at 1229.

Here, the district court excluded the testimony of American Family's biomechanical engineering expert, Dr. Jeffrey Broker, without providing any meaningful analysis. In response to the district court's announcement at the final pretrial conference that it would not accept motions in limine, Mr. Adamscheck's counsel explained he had planned to file a motion to exclude Dr. Broker's testimony. He then described Dr. Broker as "a biomechanical engineer who I think his opinion is that, given the forces from the accident, [Mr. Adamscheck] couldn't have been hurt in the type of accident that occurred." Based on this statement alone, the district court ruled it would exclude the testimony. Despite assurances from American Family's counsel that she could lay the proper foundation, the district court reiterated it would not allow Dr. Broker to testify and instructed counsel to make a proffer of the expert's testimony at trial.

In excluding Dr. Broker's testimony, the district court did not ask for or review his qualifications or proposed opinions.[6] Rather, without the benefit of a

_____

[6] Mr. Adamscheck contends the district court had all the information it needed in American Family's proffer to reject Dr. Broker's testimony. But nothing in the record suggests the district court ever reviewed or evaluated Dr. Broker's expert report after Mr. Adamscheck offered it as a proffer. Rather, the district court indicated the proffer would be made part of the record and then stated, "I don't need it." Moreover, the district court excluded the expert testimony months before it

19

motion to exclude Dr. Broker's testimony or a *Daubert* hearing, the district court made an off-the cuff decision based solely on an equivocal, one-sentence description of Dr. Broker's testimony provided by the party opposing its admission. And the district court failed to make any findings of fact or to otherwise explain why it excluded Dr. Broker's testimony, stating only that all rear-end accidents are different. Under these circumstances, we agree with American Family that the district court failed to perform its gatekeeping function and, therefore, exceeded its discretion in excluding Dr. Broker's testimony. *See United States v. Roach*, 582 F.3d 1192, 1207 (10th Cir. 2009) (concluding that in the absence of "any factual findings indicating the basis of the court's determination" to admit expert testimony, "[a] conclusory statement that the court had made such a determination will not suffice").

## 2.    Relevance

At oral argument, Mr. Adamscheck asserted that, even if the district court failed to fulfill its gatekeeping obligations under Rule 702, we should affirm the exclusion of Dr. Broker's testimony on the alternative ground that it was not relevant. Although we "may affirm on any ground apparent in the record, affirming on legal grounds not considered by the trial court is disfavored." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011). Here, Mr. Adamscheck did not challenge the testimony in the district court on the basis of relevance and there is no indication relevance was the reason the district court excluded it.

---

received the proffer, based solely on Mr. Adamscheck's one-sentence characterization of Dr. Broker's opinions.

However, as part of its Rule 702 analysis, American Family discussed the relevance of Dr. Broker's testimony in its opening brief to this court.[7] Mr. Adamscheck did not respond to this argument or otherwise address the relevance of Dr. Broker's testimony in his appellate brief. Instead, he raised relevance as an alternative basis to affirm the district court's decision for the first time at oral argument. The issue is therefore "considered waived." *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998). *See also Burlington*, 505 F.3d at 1031 (declining to review an issue on appeal where the appellant "failed to provide arguments or authorities in support of th[e] issue" because "[w]e will not review an issue in the absence of reasoned arguments advanced by the appellant as to the grounds for its appeal"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

---

[7] In its brief, American Family correctly stated that Rule 702 requires an analysis of relevance. *See Daubert*, 509 U.S. at 589 ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); *id.* at 591 (recognizing Rule 702's requirement that expert evidence "assist the trier of fact" and concluding that "[t]his condition goes primarily to relevance"). In fulfilling its gatekeeping function, a district court must decide first, whether the expert testimony is reliable, and second, whether it is relevant to the task at hand. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233-34 (10th Cir. 2004). Thus, to establish that it properly performed its *Daubert* assessment, "[t]he district court must . . . make specific factual findings on the record which are sufficient for an appellate court to review the trial court's conclusion concerning whether the testimony was scientifically reliable *and factually relevant*." *Id.* at 1232 (emphasis added).

21

### 3.    Harmless Error

Next, Mr. Adamscheck argues we should affirm despite the district court's failure to fulfill its gatekeeping function, because the error was harmless. Relying on our decisions in *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1190–91 (10th Cir. 2014), and *Kinser v. Gehl Co.*, 184 F.3d 1259 (10th Cir. 1999), *abrogated on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440 (2000), Mr. Adamscheck argues the record contains sufficient information supporting the district court's decision to exclude Mr. Broker's testimony and thus renders the absence of findings of fact harmless.[8] Under the present facts, we are not persuaded. *See, e.g.*, *Burlington*, 505 F.3d at 1031 (reversing and remanding where district court failed to make adequate record explaining the reasons it excluded expert's testimony despite appellee's request for appellate court's independent evaluation of gatekeeping factors based on the record); *Goebel*, 215 F.3d at 1089 (declining to express an opinion on the admissibility of the expert's testimony and instead reversing and remanding for a

---

[8] Mr. Adamscheck also cites *Schultz v. Wells*, 13 P.3d 846 (Colo. App. 2000), to argue Dr. Broker's testimony was inadmissible because biomechanical testimony should be excluded when used to explain the cause of a person's injuries. But *Schultz* does not stand for the broad conclusion that biomechanical evidence can never be used to determine whether a person was injured in a particular accident. The trial court in *Schultz* excluded evidence of the injury potential of low-speed accidents but did so because the tests relied upon by the expert were used to design cars, not to "assess[] a threshold of applied force for injury in rear-end car accident." *Id.* at 852. Thus, the holding in *Schultz* was based on the defects in the scientific methodology employed, and therefore does not support the conclusion that biomechanical testimony is inadmissible whenever the expert plans to testify about the probability of injury in low-impact collisions. Rather, the admission of such testimony is dependent upon the trial court's careful assessment of whether it is reliable and will be helpful to the jury.

new trial). Here, the district court excluded Dr. Broker's testimony without providing any explanation, making factual findings, or holding a *Daubert* hearing at which the parties could present legal argument. Under these circumstances, the record is simply inadequate to allow us to assume the gatekeeping function of the district court by conducting an independent review of Dr. Broker's qualifications or the reliability of his opinions.

*Storagecraft* and *Kinser* do not support a contrary conclusion. In both cases, the district court admitted, rather than excluded, the expert's testimony; and in both cases, the record contained independent, admissible evidence establishing the same proposition to which the expert had testified. *Storagecraft*, 744 F.3d at 1191; *Kinser*, 184 F.3d at 1271–72. By contrast, Dr. Broker's excluded testimony was materially different than any other evidence introduced at trial.

American Family planned to offer Dr. Broker to support its theory that Mr. Adamscheck's alleged injuries could not have been caused, at least to the extent claimed, by the relatively minor rear-end collision with Ms. Agan. It is true that American Family introduced non-expert evidence to support its theory, including evidence showing the low-impact nature of the accident, the lack of significant property damage, the lack of injuries reported at the scene, and video surveillance which, according to American Family, showed Mr. Adamscheck engaging in activities he claimed he was unable to do. But Dr. Broker would have provided testimony based on his expertise and training as a biomechanical engineer, explaining

23

why those facts supported his opinion that the injuries claimed by Mr. Adamscheck could not have been caused by the accident.

If allowed to testify, Dr. Broker would have provided analyses of musculoskeletal complaints, vehicle dynamics, occupant biomechanics, general injury mechanisms involving the spine, lumbar spine injuries in rear-end motor vehicle accidents, and intervertebral disc injuries. Analyzing these specific topics and the factual evidence in this case, Dr. Broker would have testified "[t]o a reasonable degree of biomechanical engineering probability, Mr. Adamscheck's low-speed motor vehicle accident was not consistent with generating the type of significant low back problems from which he suffered." And Dr. Broker would have attributed "Mr. Adamscheck's lumbar spine condition . . . , logically and scientifically from a biomechanical perspective," to "his pre-accident condition and exposures (notably the injury-producing lifting event in early 2010), and independent of the subject June 7, 2011 motor vehicle accident." Although the other evidence introduced at trial may have supported Dr. Broker's opinions, it was not a substitute for or cumulative of Dr. Broker's expert opinion based on that evidence.

Indeed, Dr. Broker's testimony was critical to American Family's causation theory, which it intended to offer as an alternative to Mr. Adamscheck's and his medical experts' opinion that his debilitating injuries were caused by the accident.[9]

_____

[9] Mr. Adamscheck also maintains American Family admitted causation and therefore cannot dispute the issue through Dr. Broker. In support, he relies on American Family's admission to a request which asked to "admit Darian Agan [sic]

24

By excluding Dr. Broker's testimony, the district court left the jury with expert evidence that exclusively supported Mr. Adamscheck's theory of the case. Where Dr. Broker's opinions would have provided an alternative explanation of causation to that offered by Mr. Adamscheck's medical experts, we cannot conclude the exclusion of Dr. Broker's testimony was harmless. *See Graham v. Wyeth Labs.*, 906 F.2d 1399, 1410–11 (10th Cir. 1990) (exclusion of causation expert "effectively vitiated a relevant theory which Wyeth was entitled to establish" and as a result, the error "inevitably had to prejudice Wyeth's defense, and cannot be considered harmless"). *See also Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 654 (10th Cir. 1991) (exclusion of "critical" expert testimony on causation "created an undue hardship, affecting plaintiffs' substantial rights").[10]

In sum, the exclusion of Dr. Broker's testimony left American Family without evidence to counter the causation testimony from Mr. Adamscheck's medical experts. Accordingly, we cannot conclude the district court's error in failing to conduct a proper review of Dr. Broker's testimony was harmless. And as previously discussed,

---

negligent driving caused injuries to Plaintiff." Although American Family "[a]dmitted" the accident caused "injuries" to Mr. Adamscheck, the request did not ask American Family to admit, and it therefore did not admit, that the accident caused all of the injuries Mr. Adamscheck now claims.

[10] For the first time at oral argument, Mr. Adamscheck argued Dr. Broker's alternative causation theory was deficient because it did not address his theory that the accident aggravated, rather than caused, his injuries. This argument is waived. *See Fed. Ins. Co.*, 157 F.3d at 805.

we cannot conduct an independent *Daubert* review on appeal, due to the inadequacy of the record. We turn now to the question of how to remedy this prejudicial error.

## 4.    Remedy

Mr. Adamscheck asks us to remand for the limited purpose of allowing the district court to conduct a retrospective *Daubert* hearing to determine whether Dr. Broker's testimony was properly excluded. As we explained in *Dodge*, "we think no district court would be well positioned to make valid findings given the overwhelming temptation to engage in post hoc rationalization of [excluding] the expert[]." 328 F.3d at 1229 (citing *Mukhtar v. Cal. State Univ.,* 319 F.3d 1073, 1074 (9th Cir. 2003), *amending* 299 F.3d 1053, 1066 (9th Cir. 2002)).[11] We therefore reject Mr. Adamscheck's suggestion that we place the district court in that difficult position.

We hold the district court abused its discretion by excluding Dr. Broker's testimony without providing a record of its gatekeeping inquiry under Rule 702. The record on appeal is inadequate for us to conduct a *Daubert* review in the first instance and we consequently, express no opinion on Dr. Broker's qualifications or the relevance and reliability of his expert testimony. But we can determine that Dr.

---

[11] In *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 466 (9th Cir. 2014) (en banc), the Ninth Circuit limited the court's holding in *Mukhtar*, to require a new trial only where the failure to conduct a *Daubert* is not harmless. And the Ninth Circuit has since clarified that the holding of *Barabin* mandates a new trial if the district court fails to conduct a *Daubert* review before admitting *or excluding* expert testimony and that failure cannot be determined to be harmless. *United States v. Christian*, 749 F.3d 806, 813 (9th Cir. 2014).

Broker's proffered testimony would not have been cumulative of other evidence introduced at trial and was offered as American Family's alternative causation theory. As a result, we cannot conclude the error in excluding it without proper consideration was harmless.[12] Accordingly, we vacate the verdict, and remand for a new trial, during which the parties may offer expert testimony. Before admitting or excluding any challenged expert testimony, the district court should conduct an appropriate inquiry on the record as to its relevance and reliability under Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert*.

### III. CONCLUSION

For the above reasons, we AFFIRM the district court's decision denying summary judgment in favor of American Family on Mr. Adamscheck's statutory claim for unreasonable delay or denial of insurance benefits, because the district court is correct that under Colorado law, workers' compensation benefits may not be offset against UIM benefits. But because the district court abused its discretion in excluding Dr. Broker's testimony without performing a proper review under Rule

---

[12] Because we remand for new trial, we do not reach American Family's challenge to the calculation of statutory damages. Although in some instances we might reach this issue for the purposes of remand, we decline to do so here, because American Family did not bring the issue to the attention of the district court. When the district court raised the issue with the parties after the verdict, Mr. Adamscheck's counsel explained that the statutory damages in the amount of two-times the insurance benefit due, was "in addition to the principal," suggesting that the total award would be three times the benefit. Contrary to its position on appeal, American Family's counsel replied, "That's my understanding, Your Honor."

702, and because that error was not harmless, we vacate the verdict and REMAND

for a new trial.