**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

FEDERAL INSURANCE COMPANY,

      Plaintiff-Appellee & Cross-
      Appellant,

v.

TRI-STATE INSURANCE
COMPANY,

      Defendant-Appellant & Cross-
      Appellee.

Nos. 96-5206, 96-5271

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 93-CV-715-B)**

---

John H. Tucker, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma
(Kerry R. Lewis, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma,
with him on the briefs), for Plaintiff-Appellee/Cross-Appellant Federal Insurance
Company.

Tom E. Mullen, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City,
Oklahoma (Michael S. McMillin, Fenton, Fenton, Smith, Reneau & Moon,
Oklahoma City, Oklahoma, with him on the briefs) for Defendant-
Appellant/Cross-Appellee Tri-State Insurance Company.

---

Before **BALDOCK**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

**EBEL**, Circuit Judge.

Federal Insurance Company ("Federal") settled a claim against its insured for $2.75 million. Federal's insured was also listed as an additional insured under policies issued by Tri-State Insurance Company ("Tri-State"). Federal sued Tri-State for indemnification of the $2.75 million. The district court held that Tri-State owed Federal $2 million under two of Tri-State's policies, but that two other Tri-State policies were inapplicable and that Federal could not recover prejudgment interest. Tri-State appeals and Federal cross-appeals. We affirm in part and reverse in part.

## BACKGROUND

Mike McElroy ("McElroy") and Glen Mitchell ("Mitchell") were subcontractors for Healdton Tank Truck Service ("Healdton"). Healdton had contracted a Master Service Agreement ("MSA") with Citation Oil and Gas Corporation ("Citation") to clean out tanks Citation used for gathering, storing, and transporting oil, salt water, and fresh water. On October 16, 1991, McElroy and Mitchell brought two trucks to Citation's tanks to perform Healdton's tasks under the MSA. After parking close to the tanks, they opened a manhole at the top of the tank and the vacuum pump on Mitchell's truck began to vacuum residue

from the tank. The trucks' engines were running, and when fumes escaped an explosion occurred. McElroy was severely burned. He later settled a negligence suit against Citation for $2.75 million.

Citation was insured by Federal. Federal had issued to Citation a general liability policy for $1 million, a commercial umbrella liability insurance policy for $10 million, and two business auto policies ("BAPs") for $1 million each. The $2.75 million was paid from the general liability and commercial umbrella liability policies.

During the McElroy litigation, Citation demanded indemnity from Healdton pursuant to the MSA, which required Healdton to secure insurance for its subcontractors and to name Citation as an additional insured. Healdton presented Citation's demand to its insurer, Tri-State. At the time of the accident, Tri-State had issued four policies which were potentially applicable: a commercial general liability ("CGL") policy issued to Healdton for $1 million; a BAP issued to Healdton for $1 million; a BAP issued to McElroy for $1 million; and a BAP issued to Mitchell for $1 million. Citation was named as an additional insured on Healdton's CGL policy and BAP, but not on McElroy's or Mitchell's BAPs. Although Tri-State approved the $2.75 million settlement as reasonable, it did not pay out on any of its four policies.

Federal filed a declaratory judgment action against Tri-State pursuant to 28 U.S.C. § 2201 and sought reimbursement for the $2.75 million. After a bench trial, the district court held that Tri-State was liable on Healdton's CGL policy and BAP and that these policies provided primary coverage. The district court further held, however, that Tri-State was not liable on Mitchell's or McElroy's BAPs because Citation was not an additional insured on those policies. Consequently, Federal received judgment for only $2 million rather than the full $2.75 million. Upon request for reconsideration, the court rejected Tri-State's argument that the "operations exclusion" in Healdton's BAP barred coverage. Tri-State, conceding the applicability of its CGL policy, paid $1 million of the judgment. Federal also sought an award of prejudgment interest, but the district court held that under Oklahoma law Tri-State's liability was restricted to the limits of its policies. Consequently, it denied Federal's motion for prejudgment interest.

In appeal 96-5206, Tri-State appeals the applicability of the Healdton BAP. In appeal 96-5271, Federal cross-appeals the determination that Mitchell's BAP is inapplicable and the denial of prejudgment interest.

**DISCUSSION**

"When the relevant facts are undisputed, we review the district court's interpretation of an insurance contract de novo." Houston General Ins. Co. v. American Fence Co., 115 F.3d 805, 806 (10th Cir. 1997).

In a diversity case a federal court must apply the choice of law rules of the forum state. See Klaxon Co. v. Stanton Electric Mfg. Co., 313 U.S. 487, 496 (1941). We conclude that because Oklahoma is the place of contracting, Oklahoma courts would apply Oklahoma law in this case. See Bohannan v. Allstate Ins. Co., 820 P.2d 787, 793, 797 (Okla. 1991).

## I. No. 96-5206

The district court held that Tri-State was liable on both the CGL policy and the BAP it issued to Healdton. Tri-State has conceded that the CGL policy it issued to Healdton covers the accident. Tri-State argues, however, that the "operations exclusion" in the BAP it issued to Healdton works to exclude coverage under that policy.

The "operations exclusion" found in section II.B.9 of the Healdton BAP provides that the policy does not apply to "'[b]odily injury' or 'property damage' arising out of the operation of any equipment listed in paragraphs 6.b and 6.c of the definition of 'mobile equipment' [found at section V.G]." Paragraph 6 of section V.G includes within the definition of "mobile equipment" the following:

Vehicles not described in paragraphs 1, 2, 3, or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

. . .

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting or well servicing equipment.

The district court concluded that the "operations exclusion" applies only to "mobile equipment," and because paragraph 6.c. clearly indicated that Mitchell's and McElroy's trucks were "autos" rather than "mobile equipment," the exclusion was inapplicable here.

Reading the terms of the "operations exclusion" indicates that the district court's reasoning was incorrect. The "operations exclusion" does not require that the trucks be "mobile equipment" as opposed to autos. Instead, it excludes any injuries that "arise out of" equipment listed in either paragraph 6.b. or 6.c. of Section V.G. As Tri-State argues, pumps are clearly listed in paragraph 6.c. Consequently, the question becomes whether McElroy's injuries "arose out of" the operation of the pumps mounted on McElroy's and Mitchell's trucks. If so, then the "operations exclusion" bars coverage under the Healdton BAP.

The district court made several findings relevant to our inquiry, most importantly the following:

- 6 -

46. Both trucks were parked too close to the tank and had their engines running before the fire ignited. Mitchell's truck had just commenced the tank cleaning operation by vacuuming residue from the bottom of the tank.

47. McElroy's truck was running but he had not yet started his water pump to inject water into the tank following the vacuuming.

. . .

50. The only expert testimony as to causation was that <u>fumes escaped and/or were drawn from the tank by the vacuum pump of the Mitchell vehicle</u>, which were ignited by McElroy's running truck engine.

51. Gas vapors escaped from the tank through the manhole Mitchell and McElroy opened in order to clean out the residue in the bottom of the tank.

52. The gas vapors caught fire between the two trucks, burning Mike McElroy severely.

53. The fire that caused Mr. McElroy's bodily injury resulted from the use of his and/or Mitchell's truck.

54. <u>Fumes which passed through the Mitchell tank increased the flammable vapors available at the McElroy truck for ignition.</u>

(emphasis added). The court made no specific finding that the vacuum pump was "the cause" of the fire. Thus, we must turn our attention to the phrase "arising out of." If "arising out of" is satisfied by the pump having <u>any</u> causal connection with the fire, then the "operations exclusion" applies to bar coverage under Tri-State's policy.

The Supreme Court of Oklahoma has not discussed the degree of causation generally implied by using the phrase "arising out of." However, in <u>Wallace v. Sherwood Constr. Co.</u>, 877 P.2d 632, 633-34 (Okla. Ct. App. 1994), an Oklahoma appellate court held that "arising out of" merely requires causation-in-fact. The court stated that such an interpretation was consistent with Oklahoma's

- 7 -

interpretation of "arising out of" in other contexts. See id. For example, in workman's compensation cases, "'arising out of employment' requires a 'causal relationship between the act engaged in at the time the [sic] injury occurs and the employment requirements.'" Id. at 633 (quoting Ogg v. Bill White Chevrolet Co., 720 P.2d 324, 325 (Okla. 1986)); see also American Management Sys. v. Burns, 903 P.2d 288, 290 n.4 (Okla. 1995) (in worker's compensation case, "'arise out of employment' contemplates the causal connection between the injury and the risks incident to employment"). In the context of automobile cases, Oklahoma employs a "chain of events" test, in which "the causal connection may be 'less than proximate cause in a tort case.'" Wallace, 877 P.2d at 635 (quoting Safeco Ins. Co. of America v. Sanders, 803 P.2d 688, 692 (Okla. 1990)).

The Oklahoma appellate court's interpretation is consistent with the general consensus that the phrase "arising out of" should be given a broad reading such as "originating from" or "growing out of" or "flowing from" or "done in connection with" – that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense. See American States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir. 1998); Winnacunnet Coop. Sch. Dist. v. National Union Fire Ins. Co., 84 F.3d 32, 35 (1st Cir. 1996) (applying New Hampshire law); Allstate Ins. Co. v. Smiley, 659 N.E.2d 1345, 1351 (Ill. App. Ct. 1995); United Serv. Auto. Ass'n v. Morgan, 939 P.2d 959, 964-65 (Kan. Ct. App.

1997); <u>Mass Transit Admin. v. CSX Transp., Inc.</u>, 708 A.2d 298, 305-07 (Md. 1998); <u>Meadowbrook, Inc. v. Tower Ins. Co.</u>, 559 N.W.2d 411, 419 (Minn. 1997); <u>Farmers Union Coop. Ins. Co. v. Allied Prop. and Cas. Ins. Co.</u>, 569 N.W.2d 436, 439 (Neb. 1997); <u>American Motorists Ins. Co. v. L-C-A Sales Co.</u>, -- A.2d --, 1998 WL 334693, at *4 (N.J. June 15, 1998); <u>Tall Bridge Auth. v. Aetna Ins. Co.</u>, 773 P.2d 906, 908 (Wash. Ct. App. 1989); <u>see also</u> 7 Am. Jur. 2d <u>Automobile Insurance</u> § 162 (1997) ("The phrase 'arising out of the use' affords coverage for injuries where the insured vehicle bears almost any causal relation to the accident at issue, however minimal."); 6B John Alan Appleman & Jean Appleman, <u>Insurance Law & Practice</u> § 4317, at 360 (Rev. ed. 1979) ("The words 'arising out of' when used in such a provision are of broader significance than the words 'caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle."); Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance 3d</u> § 101:54 (1997) ("The phrase 'arising out of' is frequently given a broader meaning than proximate cause.  The phrase is considered to mean 'flowing from' or 'having its origin in,' indicating that there only need be 'a' causal connection, rather than a proximate causal connection."); D. E. Evins, Annotation, <u>Automobile Liability Insurance: What are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle</u>, 89 A.L.R. 2d 150, 161 § 6 (1963) (collecting cases that discuss "arising out of")

(superseded by Larry D. Scheafer, Annotation, <u>Automobile Liability Insurance: What are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle</u>, 15 A.L.R. 4th 10 (1982)).

Under this broad construction of "arising out of," the district court's findings are sufficient for us to conclude that the use of the pump had a causal connection to the fire and resulting injuries suffered by McElroy, given that Mitchell had commenced operating the vacuum pump and the pump increased the amount of fumes available for ignition.

However, a further question arises whether the broad construction of the phrase "arising out of" is properly applied only to inclusionary clauses, as opposed to exclusionary clauses like the one involved in the present case, given that exclusionary clauses are usually read narrowly. For example, in <u>Westmoreland v. Lumbermens Mut. Cas. Co.</u>, 704 So.2d 176, 184-86 (Fla. Dist. Ct. App. 1997), <u>review dismissed</u>, No. 92,253 (Fla. Mar. 30, 1998), a case in which a running car was left in a closed garage and emitted carbon monoxide which was subsequently distributed throughout the house by the air conditioning system, the court defined "arising out of" in an exclusionary clause more restrictively than had the same phrase appeared in an inclusionary clause. In contrast, other courts have applied the phrase "arising out of" similarly in inclusionary and exclusionary clauses. <u>See</u> <u>Pacific Employers Ins. Co. v.</u>

Michigan Mut. Ins. Co., 549 N.W.2d 872, 877 (Mich. 1996) (noting that language of one insurer's exclusionary clause was virtually identical to other insurer's coverage clause and applying same construction of "arising out of the . . . use of" to both); Smiley, 659 N.E.2d at 1351-52 (noting that the phrase "arising out of" is given a more restrictive meaning when found in an exclusionary clause, but nevertheless applying general definition); L-C-A Sales Co., 1998 WL 334693, at *8 (noting that exclusionary clauses are generally construed in favor of the insured, but holding that the phrase "arising out of and in the course of employment" is clear and unambiguous, requiring application of general meaning). Because we do not believe that we can make a principled distinction in meaning simply based upon where in the contract the phrase "arising out of" appears, we decline to assign it a more restrictive meaning simply because it appears in the context of an exclusionary clause. Thus, we conclude that the "operations exclusion" clause precludes coverage under Healdton's BAP.

We reject Federal's contention made at oral argument that the "insured contract" clause of the "contractual exclusion" in the BAP indicates that Tri-State made an absolute commitment to pick up liability despite the "operations exclusion." Issues raised for the first time at oral argument are considered waived. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (declining to consider inadequately briefed issue although plaintiff attempted to

assert it at oral argument). Even if we were to consider the argument, we would find it unpersuasive. The "contractual exclusion," found at Section II.B.2 of the Healdton BAP, provides that the policy does not apply to "[l]iability assumed under any contract or agreement." However, it goes on to say that "this exclusion does not apply to liability for damages . . . assumed in a contract or agreement that is an 'insured contract.'" Federal contends that because the district court found that the MSA is an "insured contract," the exception to the "contractual exclusion" makes moot the "operations exclusion." However, the "insured contract" exception clearly applies only to the "contractual exclusion," and the policy indicates that the exclusions are separate and independent, stating under "Exclusions" that "[t]his insurance does not apply to any of the following." There is no indication that the "contractual exclusion" somehow trumps the "operations exclusion." Because the exclusions are separate, even if the "insured contract" exception to the "contractual exclusion" applies so that the "contractual exclusion" would be ineffective, the "operations exclusion" still bars coverage under the BAP.

## II. No. 96-5271

### A. Mitchell's BAP

The district court held that the BAPs Tri-State issued to McElroy and Mitchell did not provide coverage because Citation was not an additional insured

on those policies. On appeal, Federal argues that it is entitled to recover on the BAP issued by Tri-State to Mitchell either because "a bridge of indemnity" was created by Healdton's right to recover from Mitchell and Citation's right to recover from Healdton, or because Citation was a third party beneficiary of the contract between Healdton and Mitchell.

We need not address the merits of either of Federal's arguments. As Tri-State points out, Mitchell's BAP contains an "operations exclusion" identical to that in Healdton's BAP. Consequently, our discussion above applies equally here; because McElroy's injuries arose out of the use of the vacuum pump on Mitchell's truck, the "operations exclusion" bars coverage and the Tri-State BAP is inapplicable.

## B.    Prejudgment Interest

Federal also contends that the district court erred in denying Federal's request for prejudgment interest on the $2 million judgment. Because we have determined that the BAP is inapplicable, we must decide only whether Federal should have received prejudgment interest on the $1 million award under Tri-State's CGL policy.

In denying Federal's request, the district court relied on Carney v. State Farm Mut. Auto. Ins. Co., 877 P.2d 1113 (Okla. 1994), in which the Supreme Court of Oklahoma held that the liability of an uninsured/underinsured motorist

carrier was limited to the terms of the policy and denied prejudgment interest.

The court's decision in <u>Carney</u> was based in part on the rationale that "the carrier's liability [under the insurance contract] is limited by the contract." <u>Id.</u> at 1119. Under this reasoning, we look to the terms of the contract into which Tri-State entered, and the instant dispute is answered by the plain terms of the CGL policy. The CGL policy provides:

> We will pay, with respect to any "claim" or "suit" we defend:
> . . .
> 6.      Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
> . . .
> These payments will not reduce the limits of insurance.

This language indicates that Tri-State agreed contractually to pay prejudgment interest beyond the policy limits. Consequently, the district court erred in denying Federal's request for prejudgment interest.

## CONCLUSION

In appeal 96-5206, the district court's judgment is REVERSED and REMANDED to allow the district court to enter judgment in favor of Federal Insurance Company for $1 million rather than $2 million. In appeal 96-5271, the district court's judgment is AFFIRMED in part and REVERSED in part, and REMANDED to allow the district court to calculate the prejudgment interest due Federal Insurance Company.

- 14 -