FILED
United States Court of Appeals
Tenth Circuit

September 4, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

C.L. FRATES & COMPANY,
an Oklahoma corporation,

        Plaintiff-Appellee,

v.

WESTCHESTER FIRE INSURANCE
COMPANY, a Pennsylvania corporation,

        Defendant-Appellant.

No. 12-6274

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:11-CV-01020-L)**

---

Thomas Rowe Kendrick, Timothy L. Martin of Durbin, Larimore & Bialick, Oklahoma City, Oklahoma; Joseph K. Powers of Sedgwick LLP, New York, New York, for Defendant - Appellant.

Ryan S. Wilson, Elizabeth A. Price, Michael L. Brooks of Hartzog Conger Cason & Neville, Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.[1]

---

[1] The Defendant has requested oral argument to clarify certain legal standards. But in their briefs, the parties have sufficiently presented their positions on the legal standards. As a result, the Court has decided the appeal based on the briefs. *See* Tenth Cir. R. 34(a)(2)(C).

**BACHARACH**, Circuit Judge.

This action involves a dispute over the interpretation of an errors-and-omissions policy issued by Westchester Fire Insurance Company to C.L. Frates & Company. The policy excludes coverage for claims "arising out of" bankruptcy or insolvency.

The dispute grew out of a stop-loss policy issued by United Re to a company that had hired Frates as a broker. After issuance of the policy, United filed for bankruptcy protection. When Frates learned of the bankruptcy, it investigated and learned that United was not an insurance company, had been sued in Ohio, and had filed bankruptcy to stall the Ohio litigation. Ultimately, Frates recommended to its client that it move the stop-loss insurance to another insurer. The client agreed. However, Frates had to reimburse the client for what it lost through higher deductibles.

Saddled with the cost of this reimbursement, Frates sued Westchester under the errors-and-omissions policy. In cross-motions for summary judgment, Westchester contended that Frates's claim "arose out of" United's bankruptcy or insolvency. In turn, Frates contends that the claim "arose out of" United's deception. The district court agreed with Frates and granted its motion for summary judgment. In this appeal, we are asked: Could a reasonable trier of fact conclude that Frates's claim arose out of United's bankruptcy or insolvency? We think so. As a result, we reverse the award of summary judgment to Frates.

## Elements of the Decision

In considering the award of summary judgment, we must examine the standard applicable in the district court proceedings, the meaning of the phrase "arising out of," and the possible inferences that could be drawn by a rational fact-finder.

## Standard for Summary Judgment

To begin, we consider the summary-judgment standard. In reviewing the award of summary judgment, we view the evidence in the light most favorable to Westchester. *See Justice v. Crown Cork & Seal Co., Inc.*, 527 F.3d 1080, 1085 (10th Cir. 2008). When the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper. *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1215 (10th Cir. 2009).

## Reasonableness of a Finding for Frates

We must apply this standard against the backdrop of the underlying question, the meaning of the phrase "arising out of." Under Oklahoma law,[2] we broadly interpret the phrase "arising out of" as requiring only some connection to the injury. *See Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) (interpreting Oklahoma law). Viewing the evidence in the light most favorable to Westchester, a reasonable fact-finder could conclude that Frates's injury had at least some connection to United's bankruptcy or insolvency.

---

[2] Both parties rely on Oklahoma law.

I.  A Potential Connection to United's Bankruptcy

Frates's vice-president contends that United changed insurers for reasons unrelated to the bankruptcy. Appellant's App. at A-105 ¶ 10. Even so, a fact-finder could reasonably conclude that Frates's loss bore at least some connection to United's bankruptcy. After all, Frates's investigation was prompted by news of United's bankruptcy and the insured referred to the bankruptcy when following Frates's advice to switch insurers. *Id.* at A-104, A-137.

II.  A Potential Connection to United's Insolvency

The fact-finder could also infer at least some connection between Frates's injury and United's insolvency (apart from its bankruptcy). To address this part of the exclusion, we must know what the term "insolvency" means. Under Oklahoma law, the term "insolvency" refers to an inability to pay debts as they become due. *Illinois Ref. Co. v. Illinois Oil Co.*, 264 P. 904, 906 (Okla. 1928).

With this definition of "insolvency," a reasonable trier of fact could regard United as insolvent. This conclusion could be supported, in part, by the stipulation that United had filed bankruptcy to stall the Ohio lawsuit. Appellant's App. at A-104 ¶ 8. The bankruptcy filing could suggest insolvency, for "debtors do not generally file for bankruptcy unless they are insolvent." *See Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1116 (9th Cir. 2009). This seems to be true of United, as it submitted bankruptcy schedules reflecting assets of $505,000 and

- 4 -

liabilities exceeding $2,000,000.  Appellant's App. at A-90.  Thus, a fact-finder could reasonably find that United was insolvent.

This insolvency could also be linked to Frates's injury.  Presumably, Frates did not see United's bankruptcy schedules.  But under the stipulated facts, Frates ultimately learned that United had filed for bankruptcy protection.  *Id.* at A-104 ¶ 8. With knowledge of the bankruptcy filing, Frates could reasonably have inferred that United was unable to pay its debts as they became due.

The resulting question is whether United's insolvency bore at least some connection to Frates's loss.  A fact-finder could reasonably infer this connection from the contentions by a Frates executive that he:  (1) would not have recommended United if he had known of its financial problems associated with the Ohio litigation, and (2) recommended a switch in insurers in part because he questioned United's "financial status."  *Id.* at A-105 ¶¶ 9-10.  Together, concerns about United's "financial problems" and "financial status" could supply the required connection between its insolvency and Frates's loss.

## Conclusion

A fact-finder could reasonably infer that Frates's injury arose out of United's bankruptcy or insolvency based on:  (1) evidence that Frates's investigation was precipitated by news of the bankruptcy, (2) the insured's reference to United's bankruptcy when following the recommendation to change insurers, and (3) the stipulation regarding the effect of United's financial problems on Frates's

- 5 -

recommendation to switch insurers. As a result, we reverse the award of summary judgment to Frates and remand to the district court for further proceedings.