**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**June 7, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

JOSEPH P. SEAY, D.D.S., M.S.;
LOIS JACOBS, D.D.S., M.S.,

     Plaintiffs - Appellants,

v.

OKLAHOMA BOARD OF
DENTISTRY; SUSAN ROGERS,
individually and Executive Director
of the Oklahoma Board of Dentistry;
JAMES A. SPARKS, D.D.S.,
individually and President of
District 5 of the Oklahoma Board of
Dentistry; AUDREY CRAWFORD,
D.D.S., individually and District 8
Board Member of the Oklahoma
Board of Dentistry; CURTIS
BOWMAN, D.D.S., individually and
District 1 Board Member of the
Oklahoma Board of Dentistry;
JOSEPH DARROW, D.D.S., District
6 Board Member of the Oklahoma
Board of Dentistry; PHIL COTTON,
Chief, Public Member of the
Oklahoma Board of Dentistry;
ANGELA CRAIG, R.D.H., Hygiene
Member of the Oklahoma Board of
Dentistry; JAMES GORE, D.D.S.,
individually and District 7 Board
Member of the Oklahoma Board of
Dentistry; MICHAEL HOWL,
D.D.S., individually and 1st Vice
President of District 2 of the
Oklahoma Board of Dentistry; LISA
NOWLIN, D.D.S., individually and
District 3 Board Member of the
Oklahoma Board of Dentistry; LORI

No. 21-6054
(D.C. No. 5:17-CV-00682-D)
(W.D. Okla.)

ROBERTS, Esq., Public Board
Member of the Oklahoma Board of
Dentistry; JEFF LUNDAY, D.D.S.,
individually and 2nd Vice President
of the Oklahoma Board of Dentistry,

Defendants - Appellees.

_____

## AMENDED ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

This case involves the scope of a state board's authority to grant a

specialty license. The Plaintiffs are two dental anesthesiologists, Joseph

Seay and Lois Jacobs, who have sought specialty licenses from the

Oklahoma Board of Dentistry. Dr. Seay and Dr. Jacobs wanted to use these

licenses in advertisements, but until recently Oklahoma law did not allow

specialty licenses in dental anesthesiology. So the Board allegedly deemed

Dr. Seay and Dr. Jacobs ineligible for specialty licenses.

Dr. Seay and Dr. Jacobs responded by suing the Board and its

members for violating the Constitution and antitrust laws. For these

claims, Dr. Seay and Dr. Jacobs sought a declaration invalidating the

Oklahoma law and a related Board rule, an injunction prohibiting

---

[*]    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

enforcement of the state law and the Board rule, and compensatory damages against the Board members in their individual capacities. The Board members moved for summary judgment based on timeliness, qualified immunity, and statutory limitations on the Board's authority to issue the specialty licenses. The federal district court granted summary judgment to the Board members based on timeliness.

But the Oklahoma law changed in May 2021 to recognize dental anesthesiology as a specialty, and the Board has represented that it will grant specialty licenses to the Plaintiffs when they complete new applications. The Board's representations moot the Plaintiffs' claims for declaratory and injunctive relief.

Though these claims became moot, Dr. Seay and Dr. Jacobs had also sought damages for violations of the antitrust laws and the Constitution. On these claims for damages, we affirm the grant of summary judgment.

On the antitrust claim, Dr. Seay and Dr. Jacobs haven't addressed the district court's reasoning, so they've waived their challenge to the summary-judgment ruling.

On the constitutional claims for damages, the Defendants argue not only that the claims were untimely but also that the Board members couldn't change or subvert Oklahoma law's restrictions on specialty licenses. Dr. Seay and Dr. Jacobs could have addressed this argument in their reply brief, but they didn't. As a result, they waived any nonobvious

defect in the Defendants' alternative argument for affirmance. We see no obvious defect in that argument, so we also affirm the award of summary judgment on the constitutional claims for damages.

## I.    Our review is de novo.

We conduct de novo review of the district court's grant of summary judgment. *Murphy v. City of Tulsa*, 950 F.3d 641, 643 (10th Cir. 2019). In conducting this review, we consider the evidence in the light most favorable to Dr. Seay and Dr. Jacobs, affirming only if no genuine dispute of material fact exists and the Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1173 (10th Cir. 2007).

## II.    The claims for prospective relief became prudentially moot when the law changed and the Board softened its position.

Dr. Seay and Dr. Jacobs seek injunctive and declaratory relief to require issuance of specialty licenses in dental anesthesiology. When the Plaintiffs sued, the specialty licenses were not permitted under Oklahoma law. But during the pendency of the appeal, the Oklahoma legislature amended the Oklahoma Dental Act to include "dental anesthesiology" as a recognized specialty. Okla. Stat. tit. 59, § 328.22(A)(3)(j) (2021 supp.).

The Plaintiffs argue on appeal that the statutory change won't help them for two reasons:

4

1.    Dr. Seay and Dr. Jacobs had received their master's degrees in anesthesiology before the Commission on Dental Accreditation began accrediting anesthesiology schools.

2.    The Board and its members previously represented that Dr. Seay and Dr. Jacobs would never obtain eligibility for specialty licenses because they had obtained their master's degrees before their schools obtained accreditation.

Plaintiffs' Opening Br. at 9. In support, the Plaintiffs cite a brief that the Defendants had filed about 1½ years before the statutory change. *Id.* (citing Appellants' App'x vol. 4, at 607–09).

But the Board relaxed its position after the law had changed. At oral argument and in supplemental briefing, the Board has represented that it will grant specialty licenses to Dr. Seay and Dr. Jacobs once they complete new applications. Given these representations, the claims for declaratory and injunctive relief became prudentially moot.

## A.    The claims for declaratory and injunctive relief are prudentially moot.

Claims become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Mootness encompasses both constitutional requirements and prudential considerations. *See Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011).

Even if a claim is not constitutionally moot, a court can decline to consider requests for declaratory or injunctive relief when the claims

5

become prudentially moot.[1] *Jordan v. Sosa*, 654 F.3d 1012, 1023–24 (10th Cir. 2011). We consider a claim prudentially moot if the dispute is sufficiently "attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997) (quoting *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491–92 (10th Cir. 1993)); *see also S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("Prudential mootness addresses 'not the power to grant relief but the court's discretion in the exercise of that power.'" (quoting *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980))).

The prospective claims became prudentially moot when

- the state legislature modified the law by recognizing dental anesthesiology as a specialty and

- the Board softened its position on the Plaintiffs' eligibility for specialty licenses.

---

[1] We need not address constitutional mootness before prudential mootness. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))); *see also* Charles Allen Wright, Arthur R. Miller, and Edward H. Cooper, 13B *Fed. Prac. & Proc. Juris.* § 3533.1, at 763 (3d ed. 2008) ("It also is appropriate to invoke a prudential principle without confronting the uncertain line between Article III and prudential grounds . . . .").

Despite the change in state law and the Board's softening of its position, the Plaintiffs argue that the Board hasn't amended its rules to recognize dental anesthesiology as a specialty. Regardless of whether the rules changed,[2] the Board has acknowledged the statutory change and recognized the Plaintiffs' eligibility for specialty licenses. For example, in oral argument, the Board represented that it would grant the specialty licenses. Oral Argument at 17:15–17:30; 20:15–20:34. The Board later confirmed in writing that it would "grant the specialty license[s] once the requirements are met." Appellees' Supp. Resp. Br. on Mootness at 2.

Despite these representations, the Plaintiffs point out that they still haven't obtained their specialty licenses. But the licenses are available upon the Plaintiffs' completion of new applications.

Dr. Seay applied in 2017 when state law prohibited specialty licenses. Though the Board stated that Dr. Seay just needed to reapply, he hasn't done that. Appellees' Supp. Resp. Br. on Mootness at 2.

Unlike Dr. Seay, Dr. Jacobs applied after Oklahoma had amended the statute.[3] Days after she had applied, the Board told her that she needed to submit a copy of her driver's license, passport, or birth certificate.

---

[2]    At oral argument, the Board asserted that it had changed its rules. But we need not address this assertion.

[3]    Dr. Jacobs had previously applied for a specialty license in dental anesthesiology in 2019, but she withdrew her application two days later.

Dr. Jacobs hasn't provided the required copy in the 8+ months that have passed. The Board nonetheless approved Dr. Jacobs for a specialty license and told her that she would get the license once she furnishes a copy of her driver's license, passport, or birth certificate. The Board then informed us that it will "grant the specialty license once the requirements are met." Appellees' Supp. Resp. Br. on Mootness at 2.

The Plaintiffs argue that the Board's representations do not moot their claims because

- they do not know "what the additional requirements might be," Appellants' Am. Supp. Br. on Mootness at 4, and

- the Board already has the information needed for the specialty licenses, Appellants' Supp. Reply Br. on Mootness at 5.

But the Board told Dr. Jacobs what the additional requirements were in emails in August, September, and November 2021. So Dr. Jacobs should know the additional requirements. And the Board's application form clearly states the requirements, which include proof of citizenship (a birth certificate or passport).[4] So the requirements are apparent from the application form.

Regardless of whether the Board already has the necessary documentation, the claims for prospective relief remain prudentially moot.

---

[4]     Okla. Bd. of Dentistry, *Dentist/Specialty/Hygienist Application by Credentials*, *available at* https://www.ok.gov/dentistry/documents/App%20by%20cred%20adv%20proc%202-3-2020.pdf (last visited Mar. 15, 2022).

The Board has unequivocally represented—both in oral argument and in supplemental briefing—that it *will* grant specialty licenses to Dr. Seay and Dr. Jacobs upon completion of new applications.

In these circumstances, declaratory or injunctive relief would do little beyond what the legislature and the Board have already done. Once Dr. Seay completes a new application and Dr. Jacobs provides a copy of her identification, they will receive specialty licenses with or without judicial action. The claims for prospective relief are thus prudentially moot.

### B.　　The exception for voluntary cessation does not apply.

The Plaintiffs argue that even if the claims were otherwise moot, an exception would apply for the Board's voluntary cessation of the allegedly wrongful conduct. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174, 190 (2000) (stating that a defendant's voluntary cessation of allegedly unlawful conduct does not render the dispute moot if the conduct could "reasonably be expected to recur"); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) (stating that an exception for voluntary cessation can apply to both constitutional and prudential mootness). Invoking this exception, the Plaintiffs argue that the Board could still deny the applications for specialty licenses. We reject this argument.

9

When a claimant challenges a regulation, an amendment ordinarily moots the dispute. *Rio Grande Silvery Minnow*, 601 F.3d at 1116. "But a case is not moot if a challenged regulation is repealed and there are 'clear showings of reluctant submission [by government actors] and a desire to return to the old ways.'" *Citizen Ctr. v. Gessler*, 770 F.3d 900, 908 (10th Cir. 2014) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1117) (alteration in original). So we must consider whether the Board has shown a willingness to deny the applications even after representing that it will grant the specialty licenses. In our view, the Plaintiffs lack a reasonable basis for their apprehension.

The Board told the Plaintiffs and our court that Dr. Jacobs needed only to submit a copy of her identification. Months passed without compliance, and the Board reminded Dr. Jacobs—this time, stating that it would mail her the specialty license as soon as she furnished a copy of her identification. Then the Board told us of these communications and represented that it would issue Dr. Jacobs a specialty license once she supplies a copy of her identification. We lack any reason to question the Board's willingness to fulfill its representations to Dr. Jacobs and to us.

The Board made similar representations regarding Dr. Seay, stating that he would obtain a specialty license once he completes a new application. Despite this representation, Dr. Seay hasn't submitted a new

10

application. We again lack any reason to question the Board's willingness to carry out its representation by granting Dr. Seay a specialty license.

The exception for voluntary cessation does not apply, and the claims for prospective relief became prudentially moot when the Board represented that it would furnish the specialty licenses to Dr. Jacobs and Dr. Seay.

## III. The Plaintiffs' claims for damages are invalid.

Though the claims for damages aren't moot, they're invalid. The Plaintiffs waived an appellate challenge to the antitrust claim for damages, and the constitutional claims for damages fail because the Board couldn't grant the specialty licenses until the law changed.

### A. The Plaintiffs waived their appellate argument on the antitrust claim.

The Plaintiffs claimed a violation of the antitrust laws and argued in district court that their suit had been timely based on a continuing conspiracy to restrain the Plaintiffs from practicing their trade. The district court rejected this argument and dismissed the antitrust claim as untimely.

On appeal, the Plaintiffs have not reasserted a continuing conspiracy. They instead argue that

- their "right to compete is still being suppressed" and

- the district court rejected "the importance of Plaintiffs' right to speech and to competition."

11

Appellants' Opening Br. at 20. But these arguments don't bear on the existence of a continuing conspiracy. So even if we were to credit the Plaintiffs' arguments, they wouldn't undermine the district court's reason for granting summary judgment on the antitrust claim. By failing to challenge the district court's reasoning on this claim, the Plaintiffs waived this appellate issue. *See Navajo Nat. v. San Juan Cnty.*, 929 F.3d 1270, 1281 (10th Cir. 2019) (stating that an argument was waived when the appellant hadn't explained "why the district court was wrong" (quoting *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015))).

**B.    The Plaintiffs also waived any non-obvious defect in the Board members' argument to affirm on alternative grounds.**

The district court regarded the constitutional claims as untimely, and the Plaintiffs confined their appellate argument to the issue of timeliness. But we need not address timeliness because we affirm on alternative grounds.

In their appellate response brief, the Board members urged us to affirm based not only on timeliness but also on the prior statutory restrictions on specialty licenses. The Plaintiffs filed a reply brief, but didn't address the Board members' reliance on the prior statutory restrictions. Through that omission, the Plaintiffs waived any non-obvious defect in the Board members' alternative argument for affirmance, and we see no obvious defect.

**1.    We can affirm the award of summary judgment on alternative grounds.**

We have "discretion to affirm on any ground adequately supported by the record." *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). In deciding how to exercise our discretion, we consider whether

- "the ground was fully briefed and argued here and below,"

- "the parties have had a fair opportunity to develop the factual record," and

- "our decision would only involve questions of law" "in light of factual findings to which we defer or uncontested facts."

*Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (citations & internal quotation marks omitted). Each factor supports consideration of the Board's argument for affirmance on the alternative ground that the Board previously lacked statutory authority to issue the licenses.

First, the Defendants briefed the issue in district court and on appeal. The Plaintiffs could have (and should have) responded to this alternative argument for affirmance. But they didn't.

Second, both parties had a fair opportunity to develop the factual record on the Board's authority to grant a specialty license. In district court, the Defendants moved for summary judgment on this issue, triggering an obligation for Dr. Seay and Dr. Jacobs to present their evidence on the Board's authority to grant a specialty license. *See Celotex*

*v. Catrett*, 477 U.S. 317, 325 (1986). So we have a full factual record to decide the issue.

Finally, the Board's authority involves a purely legal question. Even now, the parties present no factual disputes as to the Board's authority prior to the recent statutory change.

Because each factor supports consideration, we address the Defendants' argument for affirmance on alternate grounds involving the Board's prior inability to grant the specialty licenses.

### 2.    The Plaintiffs waived their opportunity to address the statutory constraints on the Board.

In their response brief, the Board members argued that the claims for damages were invalid because

- Oklahoma law previously did not recognize dental anesthesiology as a specialty,

- the Board was just carrying out the state law, and

- the Board couldn't have done anything differently.

Appellees' Resp. Br. at 7–8. In their reply brief, the Plaintiffs did not respond to the merits of the Board members' argument. The Plaintiffs instead argued that

- the issue didn't relate to the district court's rationale,

- the Board members' brief did not refer to the record, and

- the argument was not responsive to the opening brief.

Appellants' Reply Br. at 4. Missing, however, was a response to the substance of the Board members' argument.

We don't craft arguments for the parties. *Perry v. Woodward*, 199 F.3d 1126, 1141 n. 13 (10th Cir. 1999). The Board members urged affirmance on alternative grounds, and the Plaintiffs had a full opportunity to address that argument in their reply brief. They declined to do so. By forgoing a response in their reply brief, the Plaintiffs waived any non-obvious defect in the Board members' alternative argument for affirmance. *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1099 (10th Cir. 2019);[5] *see Eaton v. Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) (stating that the failure to address an issue in the reply brief constitutes a waiver of "any non-obvious responses" that the appellant could have made); *United States v. A.S.*, 939 F.3d 1063, 1076 (10th Cir. 2019) (stating that we're free to conclude that the appellant waived any non-obvious responses to the appellee's argument by failing to address it in the reply brief).

Though Dr. Seay and Dr. Jacobs waived any objections to non-obvious defects, we asked about the issue after Dr. Seay and Dr. Jacobs

---

[5]    In *Hasan*, we approvingly quoted a Seventh Circuit opinion: "When an appellee advances an alternative ground for upholding a ruling by the district judge, and the appellant does not respond in his reply brief . . . , he [does not] concede[] the correctness of the ruling . . . . But he waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee." 935 F.3d at 1099 (alterations in original) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)).

had completed their presentations in oral argument.[6] They responded to our questions on the issue. But their responses to our questioning don't cure the waiver from their failure to address the issue in their reply brief. *See Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) (appellate arguments are waived when presented for the first time in oral argument).

After oral argument, we ordered supplemental briefing on mootness. The Plaintiffs responded, presenting their argument on mootness. But the Plaintiffs slipped into their supplemental brief a new response to the Board's alternative argument for affirmance. Appellants' Am. Supp. Br. on Mootness at 5. That was too late. We ordered briefing on *mootness*, not issues that could and should have been presented in the Plaintiffs' reply brief. We thus confine our review to any obvious defect in the Board members' alternative argument for affirmance.

We haven't squarely addressed how to consider obviousness in this setting. But the Supreme Court and our court have addressed obviousness when considering qualified immunity and plain error. In these settings, an error is ordinarily obvious only when it is apparent from precedent or the

---

[6]    At that time, we asked the Plaintiffs why they haven't waived the Board members' alternative argument for affirmance by failing to address it in the reply brief. Oral Arg. at 29:28–31:51. The Plaintiffs did not respond to this part of the question or otherwise suggest a reason for us to overlook the waiver. *See id.*

great weight of authority. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (qualified immunity); *United States v. Miller*, 978 F.3d 746, 763 (10th Cir. 2020) (plain error). This approach makes sense here. So we conclude that a defect in the Board members' argument would ordinarily be obvious only in the presence of contrary precedent or the great weight of authority.

### 3.    We see no obvious defect in the Board members' alternative argument for affirmance.

The Board members argued in their response brief that until the recent statutory amendment, they couldn't issue specialty licenses in dental anesthesiology. We see no obvious defect in that argument.

The Board is a creature of Oklahoma law, so the Board members drew their authority from the Oklahoma legislature. *State ex rel. Okla. State Dep't of Health v. Robertson*, 152 P.3d 875, 880 (Okla. 2006). Until 2021, Oklahoma law did not permit specialty licenses in dental anesthesiology. So the Board members could have reasonably considered themselves powerless to issue specialty licenses in dental anesthesiology.

The Oklahoma Dental Act lists the specialties that could be recognized. Until 2021, that list omitted dental anesthesiology. Despite that omission, the Plaintiffs insisted at oral argument and in their supplemental brief on mootness that the Board members had the power to grant licenses for unlisted specialties.

17

Even if the Board had enjoyed this power, it wouldn't be obvious to us. To determine the extent of the Board's authority, we ordinarily start with the wording of the statute (the Oklahoma Dental Act). *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). When the Plaintiffs sued in 2017, the statute provided that "[t]he Board *shall* use the American Dental Association guidelines for the purpose of defining a specialty practice area." Okla. Stat. tit. 59, § 328.22(D) (2015 supp.) (emphasis added).[7] The use of the mandatory *shall* suggested that the Board could grant licenses only for the listed specialties. *See Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1320 (2020). *Shall* means "[h]as a duty to; more broadly, is required to." *Shall, Black's Law Dictionary* (11th ed. 2019). "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware*, 579 U.S. at 171.

Oklahoma amended the statute in 2018, changing *shall* to *may* and allowing the Board to use either "the American Dental Association guidelines or the guidelines of another nationally recognized dental association or board for the purpose of defining a specialty practice area not otherwise defined [in the statute]." Okla. Stat. tit. 59, § 328.22(D)

---

[7] The statute elsewhere identified dental specialties that the Board had to recognize. Okla. Stat. tit. 59 § 328.22(A)(3) (2015 supp.). These specialties did not include dental anesthesiology. *See id.*

18

(2018 supp.).[8] But at that time, the American Dental Association had not yet recognized dental anesthesiology as a specialty;[9] and the Plaintiffs have not identified another national organization that had recognized dental anesthesiology as a specialty.

Dr. Seay and Dr. Jacobs point to accreditation of dental anesthesiology programs by the Commission on Dental Accreditation, arguing that accreditation allowed the Board to grant a specialty license in dental anesthesiology. But the Commission's accreditation of a dental

---

[8]    In their opening brief, the Plaintiffs state that after the American Dental Association voted to approve dental anesthesiology as a specialty, the Oklahoma legislature amended the law in *2019* by changing *shall* to *may*. The Plaintiffs are mistaken. The statute was amended in *2018* (before the American Dental Association had recognized dental anesthesiology as a specialty). *See* Okla. H.B. 2759 (2017). The 2019 amendment dealt with another provision of the statute, Okla. Stat. tit. 59, § 328.22(A)(2) (2019 supp.). *See* Okla. S.B. 603 (2019).

In their supplemental brief on mootness, the Plaintiffs assert that the legislature amended the statute in 2019 "so that the Board could avoid granting licenses to anesthesiologists." Appellants' Am. Supp. Br. on Mootness at 5. But the Plaintiffs cite nothing for this assertion.

[9]    *Anesthesia and Sedation*, Amer. Dental Assoc., https://www.ada.org/resources/research/science-and-research-institute/oral-health-topics/anesthesia-and-sedation (last updated Nov. 9, 2021) (noting that the American Dental Association recognized dental anesthesiology in March 2019); *see Am. Acad. of Implant Dentistry v. Parker*, 152 F. Supp. 3d 641, 647 (W.D. Tex. 2016) (stating in 2016 that the American Dental Association did not recognize dental anesthesiology as a specialty), *aff'd*, 860 F.3d 300 (5th Cir. 2017).

anesthesiology program does not show recognition as a specialty for licensing purposes. The Commission on Dental Accreditation notes:

> "Accreditation" is an evaluation process where an organization or agency (e.g., the Commission) uses experts in a particular field of interest or discipline (e.g., dental education) to define standards of acceptable operation/performance for universities/programs/organizations and measures compliance with them. Whereas "certification" is a process by which an organization (e.g., American Board of Oral and Maxillofacial Surgery) grants recognition of competence to an individual who has met predetermined qualifications specified by that entity.

Comm'n on Dental Accreditation, *FAQ About the Commission on Dental Accreditation* (last visited May 3, 2022), *available at* https://coda.ada.org/en/accreditation/faq; *see also* Joint App'x vol. 4, at 844 ("[The Commission on Dental Accreditation] has no role in specialty recognition."). The Commission's accreditation of a graduate dental program in dental anesthesiology does not constitute recognition of a specialty by a nationally recognized dental association.

Dr. Seay and Dr. Jacobs point out that the Board "continue[d] to refuse to grant the licenses" after the 2018 amendment to the Oklahoma statute and the American Dental Association's 2019 recognition of dental anesthesiology as a specialty. But Dr. Seay and Dr. Jacobs did not submit new complete applications following the American Dental Association's recognition of dental anesthesiology. So the Board never had an opportunity to grant them licenses on this basis.

20

Given the statutory constraints on the Board's authority and the Plaintiffs' failure to submit new applications, we see no obvious defect in the Board members' alternative argument for affirmance.

But even if the Commission's accreditation could somehow be considered recognition of a specialty in dental anesthesiology, the Board had no basis to act because

- Dr. Seay hadn't reapplied after the 2018 amendment and

- Dr. Jacobs had withdrawn her application in 2019 and hadn't reapplied until the legislature changed the law in 2021.

**4.    The Plaintiffs haven't shown an obvious constitutional violation prior to the 2021 amendment.**

In oral argument, the Plaintiffs suggested that despite the Oklahoma Dental Act's exclusion of dental anesthesiology as a recognized specialty, the Board members should nonetheless incur liability because they enforced the statute with knowledge that it was unconstitutional. Oral Argument at 29:35–31:54. A board member's reliance on a state statute may prevent liability. *See Lawrence v. Reed*, 406 F.3d 1224, 1232 (10th Cir. 2005). But "some statutes are so obviously unconstitutional" that board members may incur liability for damages unless they "second-guess the legislature and refuse to enforce an unconstitutional statute." *Id.* at 1233.

A constitutional violation would ordinarily have been obvious only if a precedent or the weight of authority had already deemed the state law

unconstitutional. *See* Part III(B)(2), above. But even now, the Plaintiffs point to no such case law.

The Plaintiffs say that the prior statutory restrictions constituted denials of due process, equal protection, and free speech. But the Plaintiffs haven't pointed to any meaningful support in the case law.

In the context of discussing the statute of limitations, the Plaintiffs asserted that Dr. Seay had a property interest in a specialty license and was entitled to due process. This assertion consisted of this paragraph:

> The [district] court trivialized Plaintiff Seay's right to due process of law. In April 2017, Seay filed an Application for a Specialty License. His application has never been considered by the Board. He has never been given an opportunity to be heard. The Board has defended the due process violation by pleading that Seay does not have a protected property interest in his license and is not entitled to due process. (JA III:444, Doc. 57; JA I: 26–27, Doc. 1.) This defense is contrary to law. *Johnson v. Board of Governors of Registered Dentists*, 1996 OK 41.

Appellants' Opening Br. at 17.

But the only cited case, *Johnson*, wouldn't have rendered a property interest obvious to the Board. There the court had addressed revocation of an existing license—not an applicant's request for a new license. *Johnson v. Bd. of Governors of Registered Dentists of State of Okla.*, 913 P.2d 1339, 1345, *corrected* (Okla. 1996).

The Plaintiffs also refer in their opening brief to a denial of equal protection. These references consist of three cursory assertions:

22

1.    Plaintiff filed an action pursuant to 42 U.S.C. § 1983 claiming that under color of state law, they had been continuously deprived of their property and liberty interest without due process of law, *denied equal protection*, freedom of speech and restrained from competition in violation of 15 U.S.C. §§ 1–26 and the Oklahoma Antitrust Reform Act, 79 O.S. § 201, et seq.

* * * *

2.    [The Plaintiffs'] Complaint and Amended Complaint include violations of due process, *equal protection* and antitrust claims. These claims were ignored by the court.

* * * *

3.    This action was not just a lingering effect of a previous constitutional harm but a recent event in which Seay was treated differently than many of his peers. It also cost him clients. This is an *equal protection allegation* Plaintiffs are treated differently than other licensed dentists.

Appellants' Opening Br. at 1, 5, 18 (emphasis added).

The Plaintiffs' references to equal protection are just as cursory in their reply brief. There the Plaintiffs say, in addressing timeliness, that (1) the Board members have ignored the claim involving equal protection and (2) the denial of equal protection is ongoing. Appellants' Reply Br. at 3–4.

The Plaintiffs do not say in either their opening or reply brief how or why the Board's failure to issue specialty licenses in violation of a state statute would have constituted a denial of equal protection.[10] We thus see

---

[10]    The Plaintiffs do assert that they were "treated differently than other licensed dentists." Appellants' Opening Br. at 18. But they do not explain this assertion or say how the different treatment would constitute a denial of equal protection.

23

no reason that the Board members would have recognized an obvious denial of equal protection in the prior statutory restrictions on specialty licenses.

Finally, in discussing timeliness, the Plaintiffs make six cursory references to a right to free speech:

1.    Plaintiffs filed an action pursuant to 42 U.S.C. § 1983 claiming that under color of state law, they had been continuously deprived of their property and liberty interests without due process of law, denied equal protection, *freedom of speech* and restrained from competition in violation of 15 U.S.C. §§ 1–26 and the Oklahoma Antitrust Reform Act, 79 O.S. § 201, et seq.

\* \* \* \*

2.    The court held that Plaintiffs had known for years that their *rights to speech* had been violated . . .

\* \* \* \*

3.    What the decision means is that the court knows the statute violates Plaintiffs' *constitutional rights to speech* right now and not just in the past, but is willing to let the unconstitutional statute stand and continue to injure Plaintiffs because they did not file suit within the two year statute of limitations.

\* \* \* \*

4.    [The Oklahoma Court of Appeals] held that the Board's action violated [Dr. Jacobs'] First Amendment *right to speech*.

\* \* \* \*

24

5.   The district court criticized the Plaintiffs because they knew that their *right to speech* had been violated for years and did nothing. This is not a fair or accurate statement.

\* \* \* \*

6.   The [district] court stated that, "Plaintiffs' chief complaint is that their rights have been violated because the subject laws and regulations prohibit them from representing themselves to the public as specialists." (JA V: 918, Doc. 67.) This statement belittles the importance of Plaintiffs' *right to speech*, the development of their professional lives and the ability to compete in business.

Appellants' Opening Br. at 1, 4, 12, 20 (emphasis added). The Plaintiffs' reply brief contains no further explanation for the asserted denial of free speech. *See* Appellants' Reply Br. at 2–3.

Even when discussing timeliness, the Plaintiffs haven't said how or why the prior statutory restrictions on specialty licenses had infringed on a right to free speech. So even if the prior statutory restrictions had infringed on a constitutional right to free speech, the infringement wouldn't have been obvious to the Board members.

\* \* \*

In the absence of any explanation or authority, we see no obvious defect in the Board members' argument for affirmance on an alternative ground. If a constitutional infirmity in the Oklahoma Dental Act had been obvious, the Board couldn't rely on the legislature's constraints on specialty licenses. But the Plaintiffs haven't pointed to any obvious constitutional infirmities in the statute.

So we need not address timeliness of the constitutional claims for damages. Even if these claims had been timely, we see no obvious defect in the Board members' alternative argument for affirmance. Without an obvious defect in that argument, we affirm the award of summary judgment based on the Board members' lack of statutory authority to issue the specialty licenses.

## IV. Judge Bacharach's law clerk had no conflict of interest.

In seeking rehearing, the Plaintiffs argue that a law clerk for Judge Bacharach developed a conflict of interest from working roughly 30 years ago on an administrative appeal in Oklahoma state court involving Dr. Jacobs.[11] This argument reflects a misunderstanding of the ethical rules for law clerks and the nature of the administrative appeal.

Judicial law clerks are governed by the Code of Conduct for Judicial Employees. Gregory Bischoping, *Reconceiving Ethics for Judicial Law Clerks*, 12 St. Mary's J. Legal Mal. & Ethics 58, 71 (2021). The Code's Canon 3F addresses disqualification. *See Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1309 (10th Cir. 2015) ("The Code of Conduct for Judicial Employees sets forth specific rules governing law clerk conflicts

---

[11] "Of course, '[i]f a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified.'" *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1311 (10th Cir. 2015) (quoting *Hunt v. Am. Bank & Tr. Co.*, 783 F.2d 1011, 1016 (11th Cir. 1986)).

of interest."). Under this canon, judicial law clerks are disqualified if they "served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning *the proceeding*, or ha[ve] expressed an opinion concerning the merits of the particular case in controversy." Code of Conduct for Judicial Employees, Canon 3F(2)(a)(v) (emphasis added).[12]

The Plaintiffs seek rehearing, arguing that Judge Bacharach's law clerk prosecuted Dr. Jacobs in this case in the early 1990s. This argument mischaracterizes the law clerk's role as well as the nature of the administrative appeal.

In the early 1990s, the Oklahoma Board of Dentistry reprimanded Dr. Jacobs for advertising as a specialist on the ground that her advertisements had been misleading. Dr. Jacobs appealed in state district court and won. The Oklahoma Board of Dentistry then appealed, and the Oklahoma Court of Appeals affirmed.

At that time, a law clerk for Judge Bacharach represented the Oklahoma Board of Dentistry in state district court and in the Oklahoma Court of Appeals. In these proceedings, Dr. Jacobs never suggested that

---

[12]    Judicial law clerks are also disqualified if they harbor personal bias or have personal knowledge of disputed evidentiary facts concerning the proceedings. Code of Conduct for Judicial Employees, Canon 3F(2)(a)(i). But the Plaintiffs do not suggest that the law clerk had personal bias or personal knowledge of a disputed evidentiary fact.

27

she was eligible for a specialty license. To the contrary, she argued simply that her advertisements were truthful and protected by the First Amendment. As Dr. Jacobs says in her opening appeal brief in our case, "[t]he Jacobs case was limited to the violation of her right to speech." Appellant's Opening Br. at 4. She also explained in our oral argument that even though she had won in state court, she later sued in federal court so that she could expand her advertising to show that she has obtained a specialty license—something that hadn't sought in her administrative appeal roughly 30 years ago: "[T]he [Oklahoma] Court of Appeals said . . . that discipline was inappropriate or wrong because it violated [Dr. Jacobs'] constitutional rights. It did not strike down the law. It did not declare it was unconstitutional. It didn't do anything to the law and the law remained on the books. What Dr. Jacobs and Dr. Seay would like to do is advertise and represent themselves to the public and let the public know that they hold a specialty license in anesthesiology in the state of Oklahoma." Oral Arg. at 9:54–10:23.

The administrative appeal of roughly 30 years ago is not the same proceeding as ours.[13] So the Code of Conduct for Judicial Employees did not require recusal of Judge Bacharach's law clerk.[14]

## V.    Conclusion

The Plaintiffs' claims for prospective relief against the Board are prudentially moot in light of the recent amendment to the Oklahoma Dental Act and the Board's softening of its position.

We affirm the award of summary judgment on the claims for damages against the Board members. On these claims, the Plaintiffs waived an appellate challenge on their theory under the antitrust laws. On the Plaintiffs' constitutional theories, the Board members couldn't incur personal liability because they couldn't grant the specialty licenses to Dr. Seay and Dr. Jacobs.

Affirmed.

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[13]    The issues also differ: Our appeal doesn't address the truthfulness of Dr. Jacobs' advertising, and the administrative appeal didn't involve her eligibility for a specialty license.

[14]    The law clerk did no substantive work in this case.